Zurich General Accident and Liability Insurance
Company, Ltd., and another, Respondents, vs. Indus-
trial Commission of Wisconsin and others, Appel-
lants.

*November 14—December 9, 1930.*

For the appellants there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and *Hannan, Johnson & Goldschmidt* of Milwaukee, attorneys for Concetta Martorana, and oral argument by *Mr. Levitan* and *Mr. W. J. Goldschmidt.*

For the respondent Zurich General Accident and Liability Insurance Company, Ltd., there was a brief by *Gold & McCann* of Milwaukee, and oral argument by *Ray T. McCann.*

For the respondent Employers Mutual Liability Insurance Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

ROSENBERRY, C. J.   Two major questions are presented in this case by the contentions made by the respective par-

ties: (1st) Did the deceased give his employer "actual notice" of his disability on August 21, 1923, as found by the commission? (2d) If the notice was sufficient, what legal consequences follow therefrom? In view of some considerations to which it will be necessary to recur at a later point in the discussion, we commence our consideration with the 1919 statute, which was in effect at the time the deceased suffered a disability on January 14, 1920. The section relating to notice was section 2394—11, which is printed in the margin.[1]

A perusal of this section indicates that failure to give and serve the notice was a bar to a subsequent claim unless (1) the employer paid compensation before the expiration of thirty days, and (2) that the failure to give the notice, or any defect or inadequacy therein, should not render it ineffectual unless it was intended to mislead the employer

---

[1] Section 2394—11. No claim to recover compensation under sections 2394—3 to 2394—31, inclusive, shall be maintained unless, within thirty days after the occurrence of the accident which is claimed to have caused the injury or death, notice in writing, stating the name and address of the person injured, the time and place where the accident occurred, and the nature of the injury, and signed by the person injured or by some one on his behalf, or in case of his death, by a dependent or some one on his behalf, shall be served upon the employer, either by delivering to and leaving with him a copy of such notice, or by mailing to him by registered mail a copy thereof in a sealed and postpaid envelope addressed to him at his last known place of business or residence. Such mailing shall constitute completed service. Provided, however, that any payment of compensation under sections 2394—3 to 2394—31, inclusive, in whole or in part, made by the employer before the expiration of said thirty days, shall be equivalent to the notice herein required; and provided, further, that the failure to give any such notice, or any defect or inaccuracy therein, shall not be a bar to recovery under sections 2394—3 to 2394—31, inclusive, if it is found as a fact in the proceedings for collection of the claim that there was no intention to mislead the employer, and that he was not in fact misled thereby; and provided, further, that if no such notice is given and no payment of compensation made, within two years from the date of the accident, the right to compensation therefor shall be wholly barred.

and the employer was in fact misled. It should be noticed also that the statute as it then stood required a written notice.

By ch. 451 of the Laws of 1921, sec. 2394—11 was amended so as to make the last clause read as follows:

"And provided, further, that the failure to give any such notice, or any defect or inaccuracy therein, shall not be a bar to recovery under sections 2394—3 to 2394—31, inclusive, if it is found as a fact in the proceedings for collection of the claim that *within the thirty-day period actual notice of the injury was given to the employer or to any officer or manager of an employer or company or to any other person designated by the employer for the purpose of receiving reports of injury, or if it is found that there was no intention to mislead the employer, and that he was not in fact misled thereby*," etc. . . .

The section was further amended by ch. 437 of the Laws of 1923, which became effective July 19th of that year, by inserting the following, which became the next to the last sentence of the section:

"The employer shall not be deemed to have been misled until the employee knew or ought to have known the nature of the disability and its relation to the employment."

We pass at this point to the consideration of the provisions of the statutes which give a right of compensation for occupational diseases. By ch. 457 of the Laws of 1919 a new section was added, as follows:

"Section 2394—32. The provisions of sections 2394—1 to 2394—31, both inclusive [workmen's compensation act], are extended so as to include, in addition to accidental injuries, all other injuries growing out of and incidental to the employment."

This section was amended in 1921 to read as follows:

"The provisions of section 2394—1 to 2394—31, both inclusive, are extended so as to include, in addition to acci-

dental injuries, all other injuries, including occupational diseases, growing out of and incidental to the employment."

This section has remained without substantial change and is now sec. 102.35. While the statute associates occupational diseases with accidental injuries and applies the law applicable to one to the other, no attempt was made to prescribe a method by which the "time of the accident"—sec. 102.03 (1)—in the case of occupational disease was to be ascertained. Hence, so far as notice to the employer was concerned, in the case of occupational disease, the determination of the rights of the impaired workman was referable to the provisions of the statutes which were intended to apply only to accidental injuries. Out of this situation have grown many puzzling and difficult situations for the manifest reason that the circumstances of one type of injury bear very little if any relation or likeness to the other. The officers charged with the administration of the law as well as the courts charged with its interpretation and application have sought for some workable rule. We consider this section at this point because it bears upon the question of notice in this case. The Industrial Commission found the notice sufficient. The evidence which supports that finding, given by the injured workman upon the first hearing, is as follows: "*Q.* Who sent you to do outside work after you had been working inside with the air chisel for eleven years? *A.* I asked the superintendent to be transferred outside."

Exhibit Z was a statement given by the deceased to an investigator by the name of C. A. Kasper. The circumstances under which it was taken do not appear. It was signed by the deceased and certified by the investigator to be a correct statement. It was offered in evidence by the employer and was apparently received without objection, and for that reason we do not consider its competency, it having

apparently been agreed by all parties that it be received. Had it not been received, other testimony might have been offered. The material part of the statement is as follows:

"I was sick, so I stayed home a few days and then told my superintendent that I had to quit the inside work, and work outside. I was away from work then only three days or so. I then told my superintendent, Mr. Mooney, I wanted to change jobs, so he gave me an outside job in the yard."

The deceased had been employed for eleven years in a dusty occupation. It is a matter of common knowledge that such occupations give rise to lung troubles and that a continued exposure increases the difficulty and greatly diminishes the chances of recovery. While this does not appear in the evidence, it is a matter of common knowledge. When the deceased had reached a point where he felt he could no longer continue his employment in the chipping room, he notified his employer and asked for other work which was given to him. The employer must have known that the change was on account of something connected with work in the chipping room that did not obtain in the outside employment. In one he was exposed to dust, in the other he was not. The change resulted in a wage loss of $4.20 per week, which must have indicated that the reason for the change was an imperative one. While the employee did not have notice under the workmen's compensation act in mind, the employer nevertheless was made aware of all the essential facts and was not misled. While the notice is far from satisfactory and was informal, we are inclined to the view that the evidence was sufficient to sustain the finding of the commission that the employer, under the particular circumstances of this case, had "actual notice" within the meaning of the statute.

We now pass to the consideration of the second proposition—the legal consequences which followed the giving of this notice. It is urged in this case that it appears from the

undisputed testimony that the employee sustained a period of disability extending from January 14, 1920, to December 8, 1921, due to the same cause and of exactly the same nature as that sustained by him in 1923; that he failed to give any notice thereof and continued his hazardous employment at his own election; that if, on the contrary, notice had been given, the nature of his employment might have been changed and his life saved and the liability of the employer largely if not wholly avoided; that the disability suffered in 1922 and 1923 was a mere recurrence of a disability already incurred and must therefore be referred to the first period of disability; that the ultimate result of the disability in 1920–21 and continued exposure to August 21, 1923, produced, as appears by the uncontradicted evidence, total disability in 1927, and death on January 3, 1929; that the entire liability being referable to the period of the first disability, the claim for compensation should be wholly disallowed. The evidence is not clear, at least there is nothing in the record from which it can be said, although it may be inferred, that the disability of 1920–21 was due solely to the employee's occupation. It further appears that he returned to work December 8, 1921, and continued for nearly two years to perform the same kind of work, being absent from his employment no more than a workman ordinarily is absent because of current illness. Under the circumstances of this case, it is considered that the attack of 1920–21 must be considered an acute attack from which the employee recovered. Had he not been subsequently exposed, his recovery might have been complete and permanent; no one can say. His capacity to work thereafter suffered no impairment until at or shortly prior to August 21, 1923. Whether the impairment which he sustained at that time was a recurrence or a new attack brought on by subsequent exposure was a matter for the commission. While the commission made no specific finding, it quite evidently treated

it as a new attack due to subsequent exposure, and we think its conclusion upon the facts cannot be disturbed.

This case is unique in one respect: there is no conflict in the evidence given by the physicians representing the employer and employee. They all agree and their expert testimony agrees with the testimony given by the employee at the hearing in 1928. From this it appears that his employment after August 21, 1923, in no way contributed to the end result; on the contrary, his health was improved thereby and the change was beneficial to him. It is undisputed also that his disability from August 21, 1923, to October 23, 1927, measured in wage loss was $4.20 per week, and that on October 23, 1927, he became permanently totally disabled and that his total permanent disability resulted from an exposure which was complete on or prior to August 21, 1923. If we follow the rule laid down or at least indicated in *Schaefer & Co. v. Industrial Comm.* 185 Wis. 317, 201 N. W. 396; *Employers Mut. L. Ins. Co. v. McCormick,* 195 Wis. 410, 217 N. W. 738; *Montello Granite Co. v. Industrial Comm.* 197 Wis. 428, 222 N. W. 315; *Hayes v. Industrial Comm.* 202 Wis. 218, 231 N. W. 584; and *Falk Corporation v. Industrial Comm.* 202 Wis. 284, 232 N. W. 542, we shall be obliged to hold that liability for partial disability was referable to the notice of August 21, 1923, and liability for the total permanent disability which arose on October 23, 1927, was referable to that date and the liability of the insurance carriers should be determined accordingly. It being apparent to the court that great injustice might result if the rule already indicated should be strictly adhered to, a reargument of the whole matter was directed and we had the benefit of the advice of counsel of all of the parties as well as the members of the Industrial Commission who appeared with counsel. It is fully realized that any rule which may be laid down will in some cases appear to be hard and work an injustice, but in this field if anywhere it is highly important that some workable rule be

ascertained which will be definite and certain and permit the administration of the law with as little controversy as possible. The first concern of course should be the interests of the impaired workman. This is so as a matter of law, not of favor. The whole purpose and philosophy of the workmen's compensation laws indicate that. If this needs any other confirmation than it already has in decided cases, it is certainly indicated by the fact that the legislature provided that in occupational diseases the employer should not be misled by failure to give notice until the employee "knew or ought to have known the nature of the disability and its relation to the employment."

In *Schaefer & Co. v. Industrial Comm., supra,* it was held that where there were successive employers each contributing to the exposure which finally resulted in disability, an employer for whom the employee was not working at the time his disability occurred was not liable. In that case there had been an attempt to apportion the liability according to the term of the exposure as found by the commission.

In *Employers Mut. L. Ins. Co. v. McCormick, supra,* it was held that liability to pay compensation in the case of an occupational disease becomes fixed as of the date when the employee was disabled from rendering further services and not when the disease had its inception. The contest in that case was between three insurance companies.

In *Montello Granite Co. v. Industrial Comm., supra,* it was held that an employee who suffered disability because of tuberculosis due to an exposure which was complete while the employer was under the workmen's compensation act, was not entitled to recover compensation against the employer who had withdrawn from the act before the disability had manifested itself. This was referable to that clause of the act which required that at the "time of the accident" both the employer and employee be subject to the compensation act. Sec. 102.03 (1).

In *Hayes v. Industrial Comm., supra,* it was held that although the disability manifested itself while the claimant was rendering services to the Ajax Rubber Company, nevertheless the Ajax Rubber Company was not liable because the disability was not caused, aggravated, or accelerated by reason of his employment by the defendant.

In *Falk Corporation v. Industrial Comm., supra,* it was held that where an employee had suffered a temporary partial disability for which a settlement had been made and had continued in the same employment and so subject to the same exposure, and thereafter sustained a total permanent disability, liability therefor was referable to the date when the total permanent disability arose on October 8, 1926. There was no attempt made in this last case to distinguish between a recurrence of a former condition and a new onset brought on by continued exposure. It appeared without dispute that the exposure had been continuous down to the time of the total permanent disability, although there had been a prior claim of total permanent disability which had been settled by the employee and employer. That settlement, however, seems to have been made partly at least on the ground that the present employer against whom the claim was made was not the one in whose employment the injured workman was when the disability arose. The disability could not have been total and permanent as the employee continued to work as before.

In the case under consideration there are three claims: (1) for permanent partial disability, (2) for permanent total disability, and (3) for death benefits. The award fixes the amount of each, and each part of the award is based upon distinct provisions of the compensation act.

Upon a full reconsideration of the entire matter, it is considered that it should be held that the "time of accident" within the meaning of the statute in occupational disease cases should be the time when disability first occurs; that the employer in whose employment the injured workman is

and the insurance carrier at that time are liable for the total consequences due thereto. So that if the end result, whatever it may be, is inevitably due to exposure already complete, that employer and that carrier become liable accordingly. If the disability is partial and there is a recovery and a subsequent disability with subsequent exposure, then it will be necessary for the commission to determine whether the subsequent disability arose from a recurrence or is due to a new onset induced by a subsequent exposure. If it finds that the disability is due to a new onset, the employer and the carrier on the risk at the time the total disability manifests itself shall be liable accordingly. If, however, there is no subsequent exposure which contributes to the disability and the disability is a recurrence of the former occupational disease, then the employer in whose employment the employee is when the recurrence takes place is not liable and so the insurance carrier upon the risk at that time is not liable on that account.

We attempt to do no more here than to indicate the general principles which it is considered should govern in these cases. Cases will undoubtedly arise in which it will be necessary to further indicate the consequences which follow from these general principles. We are urged to hold that in cases of occupational diseases due to a single exposure, liability shall become fixed as of the date of such exposure. In the first place, no question in respect thereto is presented by the record in this case, and in the second place, where the injury follows as a result of a single exposure as in the typhoid fever cases, it is covered by the provisions of the act relating to accidental injury. *Scott & Howe L. Co. v. Industrial Comm.* 184 Wis. 276, 199 N. W. 159.

This leaves unprovided for the case of a workman who has been subjected to exposure which does not manifest itself while he is in the employ of an employer who has contributed to his disability. The employer who exposed

him is not liable because the workman is not in his employment at the "time of accident." The employer in whose service he is at the time of accident and who has not contributed to the injury is not liable because the injury (occupational disease) was not incidental to and did not grow out of that employment. It is considered that the holding that the last exposure should be taken as the "time of accident" would involve the whole matter in great difficulty and uncertainty. The statute is not aimed at exposure but disability. An accident which produces no disability is not compensable. The area not covered by the rule is comparatively small and the workman is better protected than under the indicated former rule. Where, as in this case, there was but a single employer, the question of notice and recurrence becomes important only for the purpose of ascertaining which insurance carrier should be liable. In this case the Employers Mutual Liability Insurance Company went upon the risk July 1, 1926. Prior to that time the employer had notice of the disability. Prior to that time the risk was covered by the Zurich General Accident and Liability Insurance Company. During the time the risk was covered by the Zurich Company the employer and insurer had notice of partial disability. The subsequent total disability and death were due to the recurrence of the disease which was in no way contributed to by his employment subsequent to August 21, 1923. Therefore, the liability in this case is that of the Zurich Company, it having had notice of partial disability at the time of the accident, within the meaning of the statute, and it becomes liable for all the consequences of the accident (occupational disease) just as it would in the event of a true accident. This conclusion results in a reversal of the judgment.

*By the Court.*—Judgment reversed, and cause remanded with directions to the trial court to enter judgment affirming the award of the Industrial Commission.