OUTBOARD MOTOR COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION OF WISCONSIN and others, Respondents.

*October 16—November 10, 1931.*

For the appellants there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Arthur B. Doe* of counsel, all of Milwaukee, and oral argument by *Mr. Doe.*

For the respondents there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, attorneys for the Industrial Commission, and by *Hannan, Johnson & Goldschmidt* of Milwaukee, attorneys for Arthur Ringer, and oral argument by *Mr. Levitan.*

Fritz, J. The award in question was for total disability, in the nature of pneumonoconiosis, which the Industrial Commission determined was sustained by the applicant, Arthur Ringer, on June 4, 1930, the last day that he was in the employment of the Outboard Motor Company, and which the commission further determined was contracted because of the applicant's service as a grinder, which exposed him to silica dust which he inhaled while engaged in that service, from 1904 to June 4, 1930. During that period he worked for nine successive employers, including his employment by the Outboard Motor Company, which continued from April 9, 1930, to June 4, 1930. Credible evidence received on the hearing before the commission tended to establish the following facts: For about twenty-eight months, from September, 1922, to January, 1925, applicant worked for the Louis Allis Company, and there was exposed to silica dust. He became ill; had a bad cold and coughed, lost some time and finally a week because of illness; finally quit work and remained idle for nine months, during which he used medicine and tried to cure himself without consulting a physician. After working for several employers, without losing any

material amount of time because indisposed, he was again in the employment of the Louis Allis Company for about ten months from July, 1928, to June, 1929. At that employment he was exposed to more silica dust than at the previous places. He was troubled with coughing, sneezing, colds, and spitting blood for the first time. He used medicine without consulting a physician, and lost some time because of illness. He says his sickness dates from the time of that employment, but that he quit there because he disliked the job. After four days he began working for the Liberty Tool & Machine Company and continued there for over two months, until September 12, 1929, when he was discharged because his work was unsatisfactory. During that employment he lost about a week's time because of illness. His lungs felt unusual; he thought it was a cold; his condition was getting worse but he did not spit blood. After being unemployed for six days, he worked for Nash Motors Company about seven weeks, until October 29, 1929. While there he was also exposed to silica dust; he did not feel right; his condition grew worse and he was so ill that he could work about only three days a week. A physician attending his wife said he had a bad cold. He stayed in bed and attempted to cure himself by sweating. His employment was terminated because the force was reduced and he was laid off. He had a cold all that winter and was idle for five months, during which time he was given a job by the Evinrude Motor Company, but found that he could not work. Finally on April 9, 1930, he commenced to work for the Outboard Motor Company, and was continued on its payroll until June 4, 1930. During that period he worked two hundred sixty hours, and was off about half of the time because unable to work. On that account he lost four days during the second week, and thereafter lost some days every week. He worked only at wet grinding, which largely prevented silica dust flying about, but there was still some dust which he inhaled and could

taste and smell. During this period of employment he first noticed that while at work he became short of breath, and so sick that he had to sit down. His condition grew worse until he finally had a hemorrhage while at his place of employment, and a nurse in attendance said he had a cold and swabbed his throat. That night he had another hemorrhage while at his home, and he was taken to a hospital. A physician informed him that he had silicosis and possibly tuberculosis, and that he should quit his job. Since then he has not been employed.

The medical experts who testified agree that the applicant has second-stage pneumonoconiosis, with tuberculosis superimposed on pneumonoconiosis. Dr. Bellis testified that in September, 1929, the applicant had second-stage pneumonoconiosis, which disabled him to a certain degree, but which was not noticeable to his employer. Both Drs. Bellis and Banjai testified that applicant's tuberculosis began in 1929, and that his employment in 1929 at Louis Allis Company, Liberty Tool & Machine Company, and Nash Motors Company aggravated and accelerated his condition; that the second-stage pneumonoconiosis would not have disabled him if he had not contracted tuberculosis; that the combination of the two did disable him; and that but for the tuberculosis he might still earn the same wages. Both of those physicians testified also that his last employment at Outboard Motor Company aggravated and accelerated his condition; and Dr. Bellis went further and said that applicant's present condition was due to that last employment because his existing tubercular condition was aggravated by working where the air was unwashed.

Dr. Ide, who was called by the plaintiffs, testified that applicant should have been at rest instead of working, because the exertion of working harmed him; that manual labor was a menace to his improvement, but that the dust was not a factor in aggravating his condition.

The Industrial Commission, in a very helpful memorandum which was filed with its award, said:

"We have examined the testimony with care in the light of our knowledge of the processes involved and have concluded that although the hazard was perhaps reduced to a minimum in the plant of the last employer, silica was, nevertheless, inhaled by the applicant in quantities which, if continued over a sufficient period of time, would cause silicosis in one susceptible to that disease. Because of the relatively short period of time in his last employment it is probably conjectural to state that applicant's condition was materially accelerated by this employment. His condition had already approximated total incapacity, intermittently, and regardless of his last employment had reached a stage where a protracted period of total disability was imminent. It is equally true that the last employment made possibility of recovery, if it existed, increasingly doubtful."

That was a fair and correct statement, and about all that could reasonably and rightly be concluded as to the effect of the last employment on the applicant's condition. In view of that statement as to applicant's condition and the development thereof during a series of employments by different employers, the commission was confronted with the problem of determining which employer was liable under the compensation act. The answer to that problem depends upon when the disability occurred which entitled the applicant to compensation. *Employers Mut. L. Ins. Co. v. McCormick,* 195 Wis. 410, 412, 413, 217 N. W. 738. The commission, following the rule indicated in *Falk Corporation v. Industrial Comm.* 202 Wis. 284, 232 N. W. 542, held that the last employer was liable, and consequently made its award against Outboard Motor Company and its insurance carrier. However, since the decision in the *Falk Corporation Case,* this court found it necessary upon further consideration of the same problem, under a somewhat different state of affairs, in *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis.

135, 233 N. W. 772, to restate more specifically and with some modification the rule as it had been stated in the *Falk Corporation Case*. Applying the rule as stated in the *Zurich Gen. Acc. & L. Ins. Co. Case,* and considering the evidence, and the commission's findings thereon, in the case at bar, in the light of that rule, we have this state of affairs: In September, 1929, the applicant had tuberculosis superimposed on pneumonoconiosis. That combination did disable him either while employed at the Nash Motors Company from September to October, 1929, or possibly even before that employment. At all events, that combination disabled him from working at the Evinrude Company during the winter of 1929 to 1930. He never recovered from that combination of tuberculosis and pneumonoconiosis. Before entering the employment of the Outboard Motor Company in April, 1930, his condition, as the commission found, "had already approximated total incapacity, intermittently, and regardless of his last employment had reached a stage where a protracted period of total disability was imminent." As he had not recovered from his disability because of the combination of tuberculosis and pneumonoconiosis, his breakdown while working at the Outboard Motor Company was not due to any new onset but was merely a recurrence of the disease by which he first became disabled while employed in 1929. Consequently, the last employer, Outboard Motor Company, is not liable for compensation under the rules stated in the *Zurich Gen. Acc. & L. Ins. Co. Case, supra,* at pp. 146, 147, 233 N. W. 776, viz.:

"It is considered that . . . the 'time of accident' . . . should be the time when disability first occurs. . . . So that if the end result, whatever it may be, is inevitably due to exposure already complete, that employer and that carrier become liable accordingly. If the disability is partial and there is a recovery and a subsequent disability with subsequent exposure, then it will be necessary for the commission to determine whether the subsequent disability arose from a recurrence or is due to a new onset induced by a subsequent

exposure. If it finds that the disability is due to a new onset, the employer and the carrier on the risk at the time the total disability manifests itself shall be liable accordingly. If, however, there is no subsequent exposure which contributes to the disability and *the disability is* (see margin) a recurrence of the former occupational disease, then the employer in whose employment the employee is when the recurrence takes place is not liable. . . ."

In this action, in applicant's case there had been no recovery before he began to work for the last employer, Outboard Motor Company; there was no new onset of the disease after he entered that employment; and there was but a recurrence of disability because of the disease which had theretofore existed. Recovery from the disease which had caused disability before entering the employment of the last employer, and a new onset of disease causing disability after he enters such last employment, must occur in order to render such last employer liable for compensation under the rules stated in the *Zurich Gen. Acc. & L. Ins. Co. Case,* whenever the conflicting interests of successive employers or carriers are involved, and the facts are such that there arises, and becomes material, the question of whether there was but a recurrence or whether there was a new onset brought on by new exposure. The necessity for distinguishing in such cases between a recurrence of a former condition and a new onset brought on by subsequent exposure was not suggested at the time of the decision in the *Falk Corporation Case,* and the rule then stated must be understood and applied as qualified in the *Zurich Gen. Acc. & L. Ins. Co. Case.*

*By the Court.*—Judgment reversed, and cause remanded with instructions to vacate the award and to remand the record under sec. 102.24, Stats., to the Industrial Commission for further hearing or proceedings.

* NOTE: The first copy of this opinion as published in 233 N. W. 772, 776, inadvertently contained the phrase "it is not." This subsequently has been corrected by substituting therefor "the disability is."