NORTH END FOUNDRY COMPANY and another, Plaintiffs, vs. INDUSTRIAL COMMISSION and others, Defendants. [Five cases.]

*November 10, 1934—March 5, 1935.*

For the plaintiffs there were briefs by *Michael Levin,* attorney, and *Shaw, Muskat & Paulsen* of counsel, all of Milwaukee, and oral argument by *Mr. Martin R. Paulsen* and *Mr. Levin.*

For the defendant Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the defendants Motowski, Murawski, Nycz, Repati, and Pernovich there was a brief by *E. J. Herte,* attorney, and *Merle W. Hillis* of counsel, both of Milwaukee, and oral argument by *Mr. Herte.*

For the defendant Travelers Insurance Company there was a brief by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

Briefs were also filed by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Jefferson D. Burrus* of counsel, and by *Wood, Warner & Tyrrell,* all of Milwaukee, as *amici curiæ.*

The following opinion was filed January 8, 1935:

ROSENBERRY, C. J. We shall first consider the questions raised upon the appeal of the plaintiffs. It is the contention of the plaintiffs that the several claimants suffered no compensable disability while they were in the employment of the plaintiff Foundry Company. The controversy arose in the following manner: The Travelers Insurance Company had carried the compensation risk of the plaintiff Foundry Company for many years prior to November 28, 1932, on which date they terminated the contract and the Massachusetts Bonding & Insurance Company became the insurance carrier. Thereafter it served a ten-day notice of cancellation, pursuant to the provisions of sec. 102.31, Stats. 1931. The Foundry Company then requested the Employers Mutual

Liability Insurance Company to carry the risk. This the Employers refused to do unless every person in the employ of the Foundry Company was subjected to a physical examination by a physician to be selected by the insurance carrier. All employees submitted to the examination, and the examining physician with respect to the claimants here involved, made the following report as a result of his examination:

"Their physical condition is such that they now have no disability for any employment. However, continued employment in their present occupation which we understand is of a dusty nature, may result in time in impairment to their health. As they have been in your employ for some time we assume you are anxious to retain them in service and if at all possible provide them with a dustless job. We sincerely hope that such may be the case and we strongly urge this course to be followed. The humanitarian consideration of the health of your workers suggests prompt action on this subject."

Prior to December 21, 1932, none of the claimants had suffered any wage loss by reason of any disability due to exposure to silica dust. When claimants came back on December 22d, they were told they would not be given work for the reason that the result of their physical examination was not satisfactory, and the company would no longer employ them.

The controlling question raised in each of the cases is the same, but the facts and circumstances of the cases differ somewhat. No useful end would be served by setting forth a statement of the facts in detail in each case. The commission found that claimant Pernovich was totally disabled. All of the questions which we are called upon to consider arise under the facts of the Pernovich case. We shall therefore state the facts in that case somewhat in detail.

Pernovich was thirty-nine years of age. He had worked in shops in Milwaukee, began work for the North End

Foundry Company in 1926, and continued in that employ-
ment down to the time of his discharge. During the course
of his employment he was in turn chipper, moulder, sand-
blast operator, fireman, engineer, and, in his own language,
"everything that came along." He never was off because of
sickness, once or twice he had a little diarrhea, a cold, and a
little stomach trouble. He lost no time and no wages prior
to December 19th because of his physical condition. He was
examined by Dr. H. C. Dallwig on March 8, 1933, who
found he was suffering from second stage silicosis with
superimposed tuberculosis. The doctor gave it as his opin-
ion that the man was totally disabled; that he must have had
tuberculosis while he was still at work, but it was impossible
to say when it began. The doctor was asked this question:

"And in your opinion is a man with silicosis, one you term
a second stage, with a superimposed tuberculosis, able to do
any work?" to which he replied:

"He should not work. He might be able to do some, but
for his own good he should not do any work, to try to over-
come the tuberculosis infection."

On cross-examination the doctor testified:

"He unquestionably has had a silicosis which would be
demonstrable for a number of years. When his tuberculosis
process started is conjectural, but it probably started, some-
time within the past year or so. From my examination I
could say that it dated back at least a year and the silicosis
condition much longer than that. I should say that his sili-
cosis first became demonstrable probably at least five years
ago."

Pernovich testified:

"After I was examined by Doctor Sander, Shorty [the
foreman] told me they can't keep me, the state law called for
that. He was sorry for me. He says 'Too bad, George.'
As a matter of fact I was fighting to go back to work all the
time, even after that. After that I went back to see how
I was standing. I didn't believe myself I was sick."

It appears without dispute that, in response to a demand from the insurance carrier that the men be examined, the men were laid off on December 19th.

Reinhart Koepsell testified:

"We laid off every one of our men on the 19th. After they completed their work on the 19th, we discharged them until they were examined. The records show that Doctor Sander examined them on the 21st. That statement was made to all of our employees."

Pernovich testified on this point:

"On the 19th Mr. Koepsell told everybody that they couldn't work any further until after the examination. They were all discharged at that time if they ain't healthy. If the examination showed they were, they might re-employ them."

Upon other medical evidence which was substantially that given by Doctor Dallwig, the commission found that Pernovich—

"during this employment he had been employed in chipping, grinding and cleaning castings and also in the sandblasting operations; that during all this time he was exposed to the inhalation of silica dust; that the last day he actually worked was December 19, 1932; that on December 21, 1932, the employer directed the applicant to submit to a medical examination to determine his physical condition; that on the evening of December 21st the employer was advised by the examining physician that the applicant had active tuberculosis superimposed upon silicosis and that the applicant should not be continued in his dusty employment; that on December 22, 1932, the applicant was told by his foreman that he 'was no good and couldn't work' any longer, and, in the words of the president of the respondent, 'the next time (day after the medical examination) we saw them, they were told we could not employ them any more on account of the result of this examination;' that on the basis of the applicant's discharge because of his physical condition and on the basis of further medical examinations, it is clear that following December 21, 1932, the applicant was totally disabled and undoubtedly will be so disabled permanently."

Upon these findings the commission awarded compensation amounting to $17,976. In the case of Nycz, the award was $14,481.28.

Upon the claims of Repati, Motowski, and Murawski, the commission did not make final awards.

Upon the record the following facts appear to be undisputed: (1) The relation of employer and employee existed between the North End Foundry Company and Pernovich; (2) at no time down to and including December 22, 1932, had Pernovich ever sustained a wage loss due to his inability to perform his work in the usual and customary way; (3) that silicosis is a condition of the lungs brought about through the inhalation of certain forms of dust—in this case, silica dust; that it has three stages; that Pernovich was in the second stage of this disease; that it had existed in some stage for probably five years or more; that Pernovich had tuberculosis superimposed upon silicosis; that in the region affected by silicosis it was also affected by tuberculosis; that, when silicosis reaches a certain stage, the end result is inevitable, that is, there is no cure. Apparently deterioration progresses more rapidly in some individuals than in others; (4) that Pernovich was not discharged because of any present inability to perform his work, but because of the condition disclosed by the medical examination which the employer was fearful would lead to future disability. Whether the discharge be dated from the 19th day of December, when they were discharged subject to be re-employed or from the 22d day of December when they were told they would not be re-employed, is not material to a determination of the issue in this case; (5) that Pernovich, as is frequently the case while suffering from an advanced stage of silicosis upon which was superimposed tuberculosis, was able to and did continue to perform his work in the customary way; (6) that for him to continue work would diminish his chances of

recovery and probably hasten the end result, and that he should not, for his own well-being, continue to work to any extent in a dusty employment; that in March, 1933, when he was re-examined, his ability to work at any employment involving any considerable amount of physical exertion was greatly diminished if not impossible. The commission found him to be totally disabled.

The question to be decided is, Did Pernovich sustain a disability at a time when the employer and Pernovich were subject to the provisions of ch. 102, Stats., which entitled him to compensation? Sec. 102.03, Stats. 1931, which governs this case, provides:

"(1) Liability for compensation shall exist against an employer for any disability sustained by his employee and for his death, in cases where the following conditions of compensation concur:

"(a) Where, at the time of the injury, both the employer and employee are subject to the provisions of this chapter."

The term "disability" is not defined by the act. The term "injury" is defined as "mental or physical harm to an employee," and is extended to and includes diseases growing out of and incident to employment.

In a number of cases the court has taken occasion to point out the difficulties which exist in the administration of the Workmen's Compensation Act due to the fact that the amendments creating liability for disability due to occupational disease made no special provision for determining when disability arose, leaving the matter to be determined under those provisions of the law applicable to accidental injury. As has been said in previous opinions, occupational disease has a slow insidious approach, and in that respect differs widely from an accident, the happening of which can be fixed at a point in time. When the court came to apply the law it was faced with many difficulties. If it was held that disability arose when the first impairment due to occu-

pational disease arose, then those provisions of the statute relating to notice of injury might result in defeating a recovery by the employee. If it was held that compensation might be awarded, although disability might not manifest itself for a long period of time, then the employee might be cut off by the limitations provided by the act. [The court not only had the aid of counsel but the benefit of a conference with the Industrial Commission in an effort to find a workable rule.] At that time all concerned recognized the anomalous provisions of the statute. It was realized that any rule which could find support in the legislative enactment would necessarily leave some cases unprovided for. Nevertheless it was in the interest of employees as well as employers that some definitive interpretation be given to the statute. In this case it is apparent that none of the claimants had any reason to suppose that they were suffering from disease. If they had merely been discharged and not examined, they might have gone on for some indefinite time believing themselves to be well men. Probably all experienced persons know that there is a hazard in the so-called dusty trades, but like a soldier in the army, each one thinks he may escape. Authority could be found in the books for holding the statute unworkable because too indefinite. If the whole statute were condemned upon that ground, then the right to compensation would be lost to many persons where it was admittedly due.

While ch. 403, Laws of 1931, revised the Workmen's Compensation Act and defined "time of injury," "occurrence of injury," "date of injury," as the date of accident which caused the injury or the date when the disability from occupational disease first occurs, it did not define the term "disability." Under such circumstances we are obliged to assume that the legislature used the term "disability" in the act of 1931 in the sense in which it was then understood in the law.

In *Employers Mut. L. Ins. Co. v. McCormick* (1928), 195 Wis. 410, 217 N. W. 738, the court, in dealing with a matter of notice of injury, said:

"Unless the date when the employee is disabled from rendering further service be taken as the date that determines liability, it will be very difficult to administer the workmen's compensation act so far as disability resulting from occupational disease is concerned. The protection of the rights of both the employer and the employee requires that liability be fixed as of that date. If liability must be determined as of the date when the disease had its inception, the employee would be under the necessity of giving notice of every slight ailment which might be the incipient stage of some occupational disease that might cause disability at some more or less distant future time. . . .

"Unless the workmen's compensation act be construed to permit the giving of notice of claim for compensation for disability resulting from occupational diseases within thirty days from the date of disability, employees who are entitled to compensation because of disability caused by such diseases might find their claims barred. . . ." See also *Schaefer & Co. v. Industrial Comm.* 185 Wis. 317, 201 N. W. 396.

From that time forward this court has consistently held that disability occurs within the meaning of the statute when the employee is disabled from rendering further service, that is, when he no longer has the present physical ability to perform his work in the usual and customary way. Unless he is so disabled as to be unable to perform his usual and customary work in the ordinary way during the time of his employment, he sustains no compensable injury even though while in the employment he may have been subjected to exposure which contributed to the end result. See *Hayes v. Industrial Comm.* 202 Wis. 218, 231 N. W. 584; *Montello Granite Co. v. Industrial Comm.* 212 Wis. 243, 248 N. W. 427, 249 N. W. 516; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 492, 253 N. W. 167.

It has been argued in some cases that such a construction is unreasonable because it requires an employee who is suffering from silicosis to remain at work until he is so exhausted that he is physically unable to continue. That and a good many other matters were fully considered in *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772. Manifestly, the court cannot in the interpretation of a statute lay down an interpretation to fit each case as it arises and make as many interpretations of the statute as are necessary to achieve a certain desired objective in each case. It was pointed out in the *Zurich Case, supra,* that the rule there adopted after full argument and reargument and conference with the Industrial Commission and counsel, left unprovided for the case of a workman who has been subjected to exposure which does not manifest itself while he is in the employ of an employer who has contributed to his disability. The rule was adopted for the reason that the fundamental idea of the Workmen's Compensation Act is to award compensation for a wage loss suffered either by disability, total or partial, permanent or temporary. Unworkable features of the statute have been pointed out in numerous cases, and no one realizes more than does this court that its clarification is a matter of great difficulty. It has been indicated in a number of cases that the power to remedy the situation rests solely with the legislature; that the court when it has laid down its interpretation of the statute has gone as far as it can go in the performance of its judicial functions.

It is argued, however, that the court has extended the rule laid down in the *Zurich Case, supra,* in two cases. The first of these cases is *Kannenberg Granite Co. v. Industrial Comm.* 212 Wis. 651, 250 N. W. 821, which is relied upon by claimants as establishing their right to compensation in this case. In that case the employee Terve had worked for a number of years prior to July 24, 1930, for Anderson Brothers & John-

son Company, granite-cutters. In June, 1930, the medical examination made at the instance of the employers, disclosed that Terve was suffering from silicosis. He was advised that a rest would be beneficial. On July 24, 1930, he informed his employers that he was taking a vacation. He remained at his cottage in the northern part of the state until February or March, 1931, when he applied to Anderson Brothers & Johnson Company for re-employment. They declined to take him back, and on March 10, 1931, he was employed by the Kannenberg Granite Company, where he remained until May 15, 1931, when he quit his employment to take a vacation. He returned to his cottage in the north, and from that time on suffered rapid deterioration in health. He had a hemorrhage on September 6th. There was no doubt that Terve was suffering from silicosis when he took his vacation in 1930. His wife testified to the effect that he declined in strength during the time he was working for the Kannenberg Granite Company and that he left because he was not able to continue to do the work. His health would not allow him. He went to his cottage, laid around, indulged in none of the ordinary recreational activities such as swimming, fishing, or light work around the cottage. The commission found that the employer-employee relation existed at the time of his death on September 6th. That finding was set aside upon an appeal to this court for the reason that it clearly appeared that Terve himself terminated the relationship, which was at best merely temporary. This court, however, held that upon the undisputed facts in the case it appeared that Terve left because of his physical inability to continue the work; that he therefore sustained a wage loss before the relation of employer and employee was terminated, and that he was therefore within the rule laid down entitled to compensation, and the award was sustained. Here was a clear case of wage loss within the period prescribed by statute. In the *Kannenberg Granite Company Case* it was urged that

under the facts it appeared that he had a partial compensable disability while working for Anderson Brothers & Johnson Company, and that what happened while he was employed by the Kannenberg Granite Company was merely a new onset and not an original attack, but this court held under the facts that he never had a compensable injury while working for Anderson Brothers & Johnson Company for the reason that he had no wage loss. The argument in this case runs something like this: That, under the decisions of the court as they now stand, if an employee voluntarily ceases work because of physical incapacity to continue, he is entitled to compensation; that, when he is discharged by his employer because of potential future disability, he suffers a like wage loss and is equally entitled to compensation. This is the very situation which the court has repeatedly pointed out is not now covered by the act as it stands, which was framed to cover injuries resulting from accident rather than incapacity resulting from occupational disease.

The second of these cases is *Michigan Quartz Silica Co. v. Industrial Comm., supra.* In that case the claimant testified:

"Previous to June 9, 1932, I didn't feel just up to snuff. Mostly I noticed it about May 7th. It was hard for me to breathe. I wasn't as peppy as before. I was tired out most of the time, but the breathing was hardest and I had a cough. . . . I don't know how long before May 7th it had been coming on. I can't remember how long before that I was coughing. My staying out of the plant did not have anything to do with my condition. I wasn't afraid to go in there."

He further testified that he did not notify his employer of his condition because he wanted to continue his work as long as possible and did not want to lose his job. He was subjected to an examination, and on the advice of his physician he quit work on June 9, 1932. The real controversy in the case was between the insurance carriers, but the question

of whether or not there was a compensable disability was raised, and it was held that under the evidence he sustained a wage loss, that is, he quit work because of his then physical incapacity to continue it, and that the date when he suffered the wage loss was June 9, 1932. The award was sustained apparently upon the authority of the *Kannenberg Granite Company Case*. In these cases there was something over and beyond so-called medical disability. (See *Marquette Granite Co. v. Industrial Comm.* 207 Wis. 151, 240 N. W. 793.) There was an actual inability to perform the work of the claimant in the usual and customary way and because of that he ceased his work. Where an employee gives up his work because he is physically unable to perform it in the usual and customary way, that point of time in the progress of occupational disease is quite comparable to an accident which also prevents him from continuing to perform service. The right to compensation does not depend upon whether the employee quits or is discharged, it depends upon whether or not during the period the relation of employer and employee exists occupational disease growing out of and incidental to his employment renders him incapable of performing his customary work. In neither the *Kannenberg Granite Company Case* nor the *Michigan Quartz Silica Company Case* was there any doubt that there was sufficient evidence of present physical disability,—in the sense that the claimant was unable to perform his customary service,—to sustain a finding that he suffered disability during the period of his employment.

It must be apparent that the court can go no farther under the law governing this case than it went in the *Kannenberg Granite Company Case* and the *Michigan Quartz Silica Company Case*. What we are asked to do in the present case is to hold that where an employee has been subjected to exposure, but has suffered no physical disability which prevents him from performing his work in the usual and customary way,

and is discharged because an examination disclosed that such disability might arise in the future, he is entitled to compensation under the act for "medical disability." This is precisely the situation pointed out in the *Zurich Case, supra,* which the court then said was not provided for under the statute. We are without power to amend the law. Under well-established legal principles it is our duty to adhere to the rule laid down. Under circumstances which vary somewhat, the rule has been applied in the following cases in addition to those already cited: *Outboard Motor Co. v. Industrial Comm.* 206 Wis. 131, 239 N. W. 141; *Kimlark Rug Corp. v. Industrial Comm.* 210 Wis. 319, 246 N. W. 424; *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191; *Nordberg Mfg. Co. v. Industrial Comm.* 210 Wis. 398, 245 N. W. 680.

In a number of cases it has been argued that to permit an employer to discharge an employee who has been subjected to exposure in anticipation of future disability is against public policy and should in some way be prevented by the court. On the other hand, it has been argued that it is in accord with sound public policy that men supposing themselves to be healthy should not be allowed to continue in a hazardous occupation, and that such examinations are in the interest of sound public policy. Involving as these arguments do questions of public policy, obviously the matter is one for the legislature and not for the court. It is the duty of the court to administer the law as enacted by the legislature.

We find no evidence whatever in the record to sustain the finding of the Industrial Commission that the claimants in these cases suffered a compensable disability. They suffered no disability as that term is defined in the law until after the relation of employer and employee had been terminated. In this connection a word should be said in regard to so-called "medical disability." Disability is itself a somewhat elusive

and uncertain term. Medical disability is uncertain in a much higher degree. So-called medical disability, as the term is used, seems to refer to any condition of a man's body which makes him less resistant to attacks of disease or impairs his vitality. It is not necessary that the disability be of such kind or extent that the person subjected be aware of it, that it in any way impair bodily functions or manifest itself in other ways. The term is then applied to all subsequent phases from which the subject suffers until it has reached a stage where it impairs his ability to carry on his normal bodily functions, at which point he is said to be .physically disabled. If mere medical disability so-called be taken as a basis of liability in compensation cases, the amount of compensation will in practically all cases be dependent on medical opinion, and any slight impairment may be made the basis of liability. If medical disability so-called is to be made the basis of liability, it should be surrounded with such limitations and safeguards as will enable the law to be administered with fairness and justice to all concerned. We are all subjected to certain hazards of life. We all run certain risks in our occupations whatever they may be. We prefer to accept those risks and hazards and pursue an active life. It is quite probable that every man who has been a member of this court knew that his life might be prolonged if at a certain period he gave up his work. With few exceptions they have preferred to continue. The same thing is true of employees generally.

The question to be determined is, What is the just liability of an industry which unduly increases the hazards and risks of normal life? In cases of accident, prescribed formulas give a certain answer. The commencement, the duration, and the extent of accidental injuries can be determined with reasonable certainty. In cases of occupational disease, the matter is much more difficult because of the inability, first, to determine what proportion is due to the occupation and what

is due to natural causes; and, second, the nature and extent of the disability sustained.

There being no evidence to sustain the finding, the trial court was in error in modifying and affirming the award.

*By the Court.*—The judgments in the several cases appealed from are reversed, and the causes remanded with directions to the circuit court to enter judgment in each case setting aside the award of the Industrial Commission.

A motion for a rehearing was denied, with $25 costs in one case, on March 5, 1935.