JACKSON MONUMENT COMPANY and others, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents. [Two cases.]

*January 9—February 4, 1936.*

In case No. 140:

For the appellants there were briefs by *Richmond, Jackman, Wilkie & Toebaas,* and oral argument by *L. E. Hart* and *Harold M. Wilkie,* all of Madison.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Tekla Friberg there was a brief by *Fiedler & Garrigan* of Beloit, and oral argument by *G. A. Garrigan.*

For the respondent Employers Mutual Liability Insurance Company there was a brief by *Quarles. Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

In case No. 141:

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *Jefferson Burrus* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Tekla Friberg, executrix, there was a brief by *Fiedler & Garrigan* of Beloit, and oral argument by *G. A. Garrigan.*

For the respondent Hardware Mutual Casualty Company there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison.

FRITZ, J. The appeal in Case No. 141 is by the Jackson Monument Company and one of its insurance carriers, the Employers Mutual Liability Insurance Company, from a circuit court judgment entered May 31, 1935, confirming an interlocutory award made on September 2, 1933, by the Industrial Commission, which granted workmen's compensation to Otto Friberg for compensable disability sustained

by him by reason of silicosis and pulmonary tuberculosis superimposed thereon, which was an occupational disease growing out of and incident to his employment by the Jackson Monument Company.

The appeal in Case No. 140 is by the Jackson Monument Company and one of its insurance carriers, Hardware Mutual Casualty Company, from a circuit court judgment entered June 6, 1935, confirming an award made on March 6, 1935, by the Industrial Commission, granting a death benefit to Tekla Friberg, the dependent widow of Otto Friberg, who died on July 1, 1934, as the result of that occupational disease.

The final award granting the death benefit was based on the evidence which was before the commission when it made the interlocutory award and also on additional evidence, supplemental to that which was submitted originally. However, in each instance, the evidence upon which the award was based conclusively established the following facts: During the period of eleven years that Otto Friberg was in the employ of the Jackson Monument Company, and while he and his employer were subject to the provisions of the Workmen's Compensation Act, he was exposed to silica dust to such an extent that he contracted, as a result of exposure arising out of that employment, an occupational disease, viz., silicosis with pulmonary tuberculosis superimposed thereon. While the employer's plant was closed down temporarily from December 3, 1932, to March 13, 1933, because of lack of work and the usual annual holiday shutdown, Friberg sustained compensable disability in that, as the result of the occupational disease which he had contracted as stated above, he was confined to his bed for several days commencing about December 11, 1932, and during that period he was wholly unable to perform any work whatsoever. During that shutdown, there was no work for any of the employees of the plant, including Friberg, but none of them quit or was

discharged, and it was the employer's intention to give Friberg, as well as its other employees, work as soon as operations were resumed at its plant. The nature and extent of Friberg's disease and his resulting condition and inability to perform any work during that period, and the facts and circumstances in respect to the continuance of his status as an employee during all of that temporary shutdown, were such that he clearly became entitled to the payment of workmen's compensation by the Jackson Monument Company under the rule applied in *Kannenberg Granite Co. v. Industrial Comm.* 212 Wis. 651, 250 N. W. 821; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 492, 253 N. W. 167.

However, during that temporary shutdown, the employer changed compensation insurance carriers. The Hardware Mutual Casualty Company was the carrier up to February 1, 1933; and the Employers Mutual Liability Insurance Company went on that risk on February 6, 1933. As the result of that change during the shutdown, the particular time at which Friberg sustained his first compensable disability, as the result of that occupational disease, became a matter of controlling significance in determining which of those insurers was liable on the risk. The Industrial Commission's interlocutory award on September 2, 1933 (holding the Employers Mutual Liability Insurance Company liable as insurer), was based upon its findings that "the first compensable disability . . . occurred on and following, February 7, 1933; that the time of injury was February 7, 1933; . . . that the injury has resulted in total disability from said date to the date of last hearing on July 25, 1933, inclusive, and was continuing at said last date; that the silicotic condition, at least, is permanent, and that there is a permanent disability resulting from the injury." On the other hand, the commis-

sion's death benefit award on March 6, 1935 (holding the Hardware Mutual Casualty Company liable as insurer), was based on its findings that "on or about December 11, 1932, Otto Friberg became ill and spit up about a half a tea cup of blood; that he went to Dr. Ottow's office at that time where he was examined and advised to return home and go to bed until the bleeding stopped when he was to return for X-rays; that Otto Friberg remained in bed at home four or five days at that time, and that he continued to be totally disabled because of pulmonary tuberculosis superimposed on silicosis up to the time of his death on July 1, 1934." Those findings are obviously inconsistent. The circuit court in entering judgment on May 31, 1935, confirming the interlocutory award, said that it probably would not have made the finding which was made by the commission, but it was of the opinion that it could not be said that there was no credible evidence to sustain the commission's finding. However, subsequently, in entering judgment on June 6, 1935, confirming the death benefit award, the court concluded that, as there was additional testimony which more clearly showed that Friberg became disabled before February 7, 1933, and as there was credible evidence to sustain the commission's later finding, the court was likewise compelled to sustain that finding as to the date of disability, and that it did so "with a much clearer conscience than in the *Otto Friberg Case.*"

The court rightly sustained that later finding. However, it was in error in concluding that there was credible evidence to support the commission's original finding that the first compensable disability did not occur until on February 7, 1933. On the contrary, neither the evidence which was before the commission at the time of making that original finding, nor that evidence in conjunction with the evidence subsequently submitted as basis for the commission's death benefit award, justifies finding otherwise than that the first

compensable disability occurred on about December 11, 1932, and that that disability continued thereafter up to the date of the interlocutory award without any further exposure or new onset of the occupational disease which had caused it in December, 1932. A finding to the effect last stated is required by the record on which each of the awards was based, because there is no credible evidence which refutes, in any material respect, the existence of the following facts which were conclusively established and which leave no room for any finding to the contrary. In August, 1932, Friberg first noticed difficulty with his lungs, was short of breath, and consulted Dr. Ottow, his family physician. On about December 11, 1932, he had a severe hemorrhage, coughed up a cupful of blood, and went to Dr. Ottow's office for examination. There he coughed up blood, his sputum was bright red, and Dr. Ottow then found that he had a fever; that his hemorrhage was caused by the encroachment of the tubercular infection into the wall of a blood vessel; that his physical condition was worse then than it had been in August, 1932; and that he was totally disabled in December, 1932. Dr. Ottow then ordered him to go to bed, which he did for several days on which he was so weak that he had to stay in bed and was not physically able to work. Dr. Ottow advised him not to work, and considered his physical condition in December, 1932, just as totally disabling as it was when he saw him in April, 1933. Friberg never recovered from the disease which caused that compensable disability in December, 1932, and it ultimately caused his death. There was no improvement or material change in his physical condition between December 11, 1932, and March 13, 1933, when the plant resumed operations. However, during that period, there occurred (as the commission stated in a memorandum filed with its interlocutory award) the following: The employer "on February 6, 1933, took all employees [including Friberg from Beloit] to Milwaukee for a physical examina-

tion, which was requested as an incident to the new insurance company going on the risk that day. The examining physician was of the opinion that the applicant [Friberg] was suffering from rather advanced silicosis, but thought probably not from tuberculosis. The doctor thereupon advised the applicant and respondent of his opinion and advised the applicant to quit his dusty trade. The applicant was not satisfied with this advice and upon return to his home at Beloit, on the following day, consulted his personal physician with reference to the matter. This physician thereupon advised the applicant to discontinue work and to rest pending the result of tests. The applicant accepted this advice. . . . The tests were completed within a few days. They confirmed the findings of the Milwaukee physician as to silicosis and, in addition, established the presence of active tuberculosis. The applicant's physician thereupon advised the applicant to refrain from all activity and to rest for an indefinite period. The applicant continued to do so, and has been totally disabled at all times since February 7, 1933." In respect to those facts, the commission said that it was "of the opinion that this marks the commencement of compensable disability. . . . It apparently cannot be considered as commencing sooner."

In arriving at that conclusion, the commission was clearly in error as a matter of law. Those facts did not warrant the conclusions that the events which occurred on February 6 and 7, 1933, "marked the commencement of compensable disability" at that time, and that it could not be "considered as commencing sooner." Neither the conditions found then on the physicians' examinations, nor their advice to Friberg and his acceptance thereof, obviated or affected in any way the established fact that the physical incapacity and resulting compensable disability which Friberg had theretofore sustained in December, 1932, had continued uninterruptedly, without any new onset since that time. Under those circum-

stances, December 11, 1932, continued to be the time of the commencement of the first compensable disability, and the date of that first compensable disability controls in so far as fixing and determining the liability between the respective insurance carriers is concerned. *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 146, 233 N. W. 772; *Outboard Motor Co. v. Industrial Comm.* 206 Wis. 131, 239 N. W. 141.

Consequently, in Case No. 141, the judgment must be reversed, because it is apparent that the commission was in error as a matter of law in fixing February 7, 1933, instead of December 11, 1932, as the date on which the first compensable disability occurred. Judgment must be entered directing the Industrial Commission to substitute December 11, 1932, in lieu of February 7, 1933, as the date of the first compensable disability and date of injury; and, thereupon the application must be dismissed in so far as the Employers Mutual Liability Insurance Company is concerned, and the Hardware Mutual Casualty Company must be substituted in its stead as the insurance carrier, which is liable for the payment of the interlocutory award.

In Case No. 140, as the commission's death benefit award to Friberg's widow was based upon its determination that first compensable disability occurred on or about December 11, 1932, and that determination is in accordance with the evidence, the judgment confirming that award must be affirmed.

*By the Court.*—In Case No. 140 the judgment is affirmed. In Case No. 141, the judgment is reversed, with directions to enter judgment vacating the award in so far as it is against the Employers Mutual Liability Insurance Company, and remanding the record to the Industrial Commission, with directions to dismiss the application as to that insurer, and for further proceedings in accordance with the opinion.