ODANAH IRON COMPANY, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.

*September 17—October 12, 1937.*

For the appellant there was a brief by *Reid & Reid* of Hurley and *Quarles, Spence & Quarles* of Milwaukee, attorneys, and *Kenneth Grubb* and *Arthur Larson,* both of Milwaukee of counsel, and oral argument by *Mr. Grubb.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral·argument by *Mr. Levitan.*

*L. A. Tarrell* of Milwaukee, for the respondent Paul Prusi.

NELSON, J. Paul Prusi, hereinafter referred to as the "applicant," commenced to work as a miner in 1918. He was first employed by the Oliver Iron Mining Company at Ironwood, Michigan. In March, 1926, he began to work for the plaintiff, and continued to so work until April, 1933, when the mine in which he was working was temporarily closed down. At the time the mine was closed the applicant was not discharged. Nothing was said or done to indicate that the employment relationship was terminated. He was put on "company relief," so-called, which permitted him to purchase groceries and supplies on credit with the understanding that when the mine opened he would repay the plaintiff. In September, 1933, he worked for six days on a

twelve-day relief project, but quit work because he felt too ill to continue. On November 29, 1933, he was examined by two doctors employed by the plaintiff for the purpose of ascertaining his physical condition as a prerequisite to permitting him to resume work in the plaintiff's Newport mine. He was refused work because of his ill health. Since that time he has not worked, concededly because he is unable to do so. During all of the time that he worked in the mines he was exposed to silica dust. He lost no time and suffered no wage loss while employed by the plaintiff, except one week in 1927, when he had a cough, pains in his chest, and a temperature of 102 degrees. The doctor whom he consulted recalled that such illness was a transitory disease. The applicant testified that cough medicine was prescribed. His wife testified that at that time she applied mustard plasters and hot towels to relieve him. He, apparently, fully recovered from that attack and resumed work in the mine after a week's layoff. In 1930, he again lost two days as a result of illness. He had a sore chest, coughed, and had headaches. He had a fever, but his temperature was not as high as it was in 1927. He testified that his cough was more painful and that he was short winded. He consulted a doctor, who gave him cough medicine. He resumed his work after laying off two days. The doctor whom he consulted at that time likewise testified that the applicant suffered from a transitory disease. From 1930, until April, 1933, when the mine closed down, the applicant, according to his testimony, lost no time. He worked in the mine at all times when the mine was being operated. During the year just prior to the closing of the mine in 1933, because of depression conditions, the work was staggered so that each of the miners was permitted to work only two eight-hour shifts per week. There was considerable testimony tending to show that applicant was a good workman and performed his work in his usual and customary manner up to the time that the mine closed down.

Medical testimony adduced tended to show that at the time of the hearing the applicant was suffering from tuberculosis superimposed upon third-stage silicosis. Other medical testimony adduced tended to show that Prusi was suffering from tuberculosis, and that he was not suffering from silicosis.

The examiners found, among other things, that the relationship of employer and employee terminated on April 25, 1933; that while employed by the plaintiff over a period of years he contracted silicosis; that he began to feel the effects of that disease as early as 1927, but continued at his work and lost no time or wage as a result thereof until the spring of 1930, at which time he lost two days' time as a result of said disease; that thereafter he lost further time by reason of that disease to an extent undeterminable on the evidence; that, beginning in the year 1932, when the plaintiff's mine was operated only on a two eight-hour shift per week, the applicant was able, with intervening days of rest, to continue work on this schedule until April 25, 1933, without further time or wage loss; that prior to applicant's last day of work he had contracted tuberculosis which was superimposed upon silicosis, and that applicant had been totally disabled from the time of his last work for the plaintiff on April 25, 1933, except for a period of six days in September, 1933, when he attempted to work on a relief project. The examiners found that during the calendar years 1929 and 1930, when the mine was operated on a full-time basis, the applicant earned $1,583.82 and $1,639.50, respectively, and concluded therefrom that the applicant was entitled to the maximum compensation from April 25, 1933. Upon the review by the circuit court the award was confirmed.

The judgment of the circuit court is assailed because it confirmed the award which was based upon the conclusion that the relationship of employer and employee was terminated on April 25, 1933, and the finding that the applicant

suffered a wage loss in 1930 as a result of an occupational disease. A careful review of the testimony reveals no testimony which supports the conclusion that the relationship of employer and employee was terminated on April 25, 1933. Such a conclusion is *contra* to the rules laid down in *Wisconsin Granite Co. v. Industrial Comm.* 208 Wis. 270, 242 N. W. 191; *Michigan Quartz Silica Co. v. Industrial Comm.* 214 Wis. 289, 252 N. W. 682; *Jackson Monument Co. v. Industrial Comm.* 220 Wis. 390, 265 N. W. 63. The testimony of the applicant, uncontradicted as it was, permits of but one conclusion, and that is, that the relationship did not terminate then, but continued until November 29, 1933, when he was examined and denied work because of his physical condition.

There is likewise no justification in the evidence for the conclusion of the examiners that in 1930 the applicant suffered a wage loss, when he laid off for two days, that was caused by an occupational disease. He was ill but two days. He had a cough with pains in his chest accompanied by a temperature not so high as that experienced by him in 1927, when he laid off a week because of a similar illness. He did testify that at the time of the two-day illness he was short of breath, but no medical testimony was adduced which tended to show that the two-day illness was due to an occupational disease. He continued to work after a two-day layoff until April 25, 1933, without loss of time or wages. The doctor who prescribed for him at the time diagnosed his illness as a cold or cough, *i. e.,* bronchitis, a temporary affliction. Under the circumstances, it was not permissible for the examiners to guess, speculate, or conjecture, and to find that the upset in 1930 was due to an occupational disease. What was said by this court in *Motor Castings Co. v. Industrial Comm.* 219 Wis. 204, 208, 262 N. W. 577, is peculiarly applicable here:

"Moreover, although Lester laid off from work for two weeks in March, 1932, because of pains in his chest and coughing and spitting blood, that illness does not appear to

have been regarded as an occupational disease. As there was no testimony, medical or otherwise, that that illness, or the layoff in March, 1932, was due to silicosis, it would have been wholly conjectural to conclude that there was then a wage loss and compensable disability due to an occupational disease, and a finding to that effect would have been unwarranted."

But it does not follow that the applicant is not entitled to compensation. It is conceded that the commission was warranted in finding from the evidence adduced that at the time of the hearing the applicant was suffering from tuberculosis superimposed upon silicosis, an occupational disease, and that the examiners would have been warranted in finding that the applicant has been wholly disabled and incapable of performing work since September, 1933.

That inference or conclusion is certainly a permissible one, and is supported by the evidence. *North End Foundry Co. v. Industrial Comm.* 217 Wis. 363, 376, 258 N. W. 439:

"Where an employee gives up his work because he is physically unable to perform it in the usual and customary way, that point of time in the progress of [an] occupational disease is quite comparable to an accident which also prevents him from continuing to perform service."

It has been held repeatedly that there can be no compensable disability in the case of an occupational disease in the absence of a showing that the applicant has suffered a wage loss. *Michigan Quartz Silica Co. v. Industrial Comm., supra; North End Foundry Co. v. Industrial Comm., supra; Motor Castings Co. v. Industrial Comm., supra; Wisconsin Granite Co. v. Industrial Comm., supra.*

The examiners, in our opinion, could have found that the applicant's compensable disability commenced in September, 1933, and could have awarded compensation pursuant to the provisions of ch. 314, Laws of 1933, effective June 29, 1933 (now a part of sec. 102.01 (2), Stats.), which provides:

" 'Time of injury,' 'occurrence of injury,' 'date of injury' is the date of the accident which caused the injury or in the

case of disease, the last day of work for the last employer whose employment caused disability."

It is our further opinion that the examiners should not have based their award upon the wages earned by the applicant in either 1929 or 1930, when the mine was operating on full time, but should have based the award upon the applicant's average annual earning capacity at the time of injury and in the employment in which he was then engaged, pursuant to the provisions of sec. 102.11, bearing in mind the rules stated in *Highway Trailer Co. v. Industrial Comm.* 225 Wis. 325, 274 N. W. 441; *Glancy Malleable Iron Co. v. Industrial Comm.* 216 Wis. 615, 258 N. W. 445; *Hammann v. Industrial Comm.* 216 Wis. 572, 257 N. W. 612; *Allis-Chalmers Mfg. Co. v. Industrial Comm.* 215 Wis. 616, 255 N. W. 887.

*By the Court.*—Judgment reversed, and cause remanded with directions to remand the cause to the Industrial Commission for further proceedings according to law.