ALLIS-CHALMERS MANUFACTURING COMPANY and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*June 4—June 26, 1934.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth Grubb* and *J. D. Burrus*

of counsel, all of Milwaukee, and oral 'argument by *Mr. Grubb.*

FOWLER, J.   Sec. 102.46, Stats., fixes the basis for computing the award for death benefits, when death of an employee immediately results from an injury sustained in the course of his employment, and when the beneficiaries are wholly dependent on him for support, at four times the employee's average annual earnings.  Under circumstances such as are here involved the determination of an employee's annual earnings is governed by consideration of pars. (a), (b), (c), and (d) of sec. 102.11 (2), Stats.   These paragraphs are as follows:

"(a) If the employee has worked in the employment in which he was working at the time of the injury, whether for the same employer or not, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he has earned in such employment during the days when so employed.

"(b) If the employee has not so worked in such employment during substantially the whole of such preceding year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such year in the same or similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) In cases where the foregoing methods of arriving at the average annual earnings of the employee cannot reasonably and fairly be applied, such average annual earnings shall be taken at such sum as, having regard to the previous earnings of the employee, and of other employees of the same or most similar class, working in the same or most similar employment, in the same or a neighboring locality, shall reasonably represent the average annual earning capacity of the injured employee at the time of the injury.

"(d) In determining average daily wage, no day during which an employee has worked less than eight hours shall be

taken into consideration unless by agreement or custom a lesser number of hours' work constitutes the full day's service for such day. Subject to the maximum limitation the average annual earnings shall in no case be taken at less than the actual annual earnings."

Proper application of these paragraphs requires some further statements of fact.

Prior to Emilson's employment the company had adopted the code of the industry in which it was engaged that had been established pursuant to the National Industrial Recovery Act (48 U. S. Stats. 195), hereinafter referred to as the code. During the year previous to Emilson's employment the company had employed a single watchman who worked seven days a week and twelve hours a day at twenty-four cents an hour, except for a day off at intervals when another watchman took his place. The compensation of this regular watchman for this previous year was $1,082.34. Upon its adoption of the code the company, pursuant to its requirements, employed four watchmen to take the place of the single watchman, paying them thirty-four cents an hour and staggering their times of employment. Each watchman was to work only six hours a day when at work, and under the arrangement made two were to work thirty-two hours a week and the other two thirty-five hours. Emilson was one of these four watchmen and was to work thirty-two hours a week. He did so work up to the time of his death which occurred after he had been working only four days.

From the above data as to Emilson's employment it is obvious that his "average annual earnings" are not to be computed under par. (a), as he had not "worked in the employment in which he was working at the time of his injury . . . during substantially the whole year immediately preceding his injury."

From inspection of par. (b) it appears that as Emilson had not worked during substantially the whole of the preced-

ing year, to make that paragraph apply there must be "an employee of the same class" who has worked "substantially the whole of the previous year in the same or similar employment in the same or a neighboring place" whose average daily wage "may be taken as the basis" for computing Emilson's "average annual earnings." The company's regular watchman had worked the whole of the previous year at the same place. But is a full-time workman employed under circumstances ordinarily existing in the "same class" with one furnished employment under a statutory emergency relief measure who works only part time? It has been expressly held under workmen's industrial compensation statutes identical in meaning with pars. (a), (b), and (c) of our statute that the two cannot be considered in the same class, and that compensation of the latter must be computed on the basis prescribed by par. (c). *Prentice v. New York State Rys.,* 181 App. Div. 144, 168 N. Y. Supp. 55; *Barlog v. Board of Water Comm'rs,* 239 App. Div. 225, 267 N. Y. Supp. 822; *Budowski v. Atlas Steel Casting Co.* 237 App. Div. 667, 263 N. Y. Supp. 255; *Littler v. Fuller Co.* 223 N. Y. 369, 119 N. E. 554; *Ruppert v. Plattdeutsche Volksfest Verein,* 263 N. Y. 338, 189 N. E. 240; *Marshall v. Andrew F. Mahony Co.* 56 Fed. (2d) 74; *Baltimore & O. R. Co. v. Clark,* 59 Fed. (2d) 595; *Continental Cas. Co. v. Lawson,* 64 Fed. (2d) 802. In the opinion in the case last cited it is said, p. 805:

. . . "The amount of the award should be determined under . . . [paragraph (c)] and . . . the earnings of the claimant himself and not of another employee must be used in arriving at the amount of compensation to be allowed. 'Earning capacity,' as used in this subsection [paragraph (c)], means willingness to work considered in connection with opportunity to work."

As said in *Barlog v. Board of Water Comm'rs, supra,* p. 823:

"Loss or diminution of wage-earning ability is the foundation upon which compensation awards and death benefits are

computed. . . . Deceased did not belong to the class of employees who had been and were working full time. The wages received by them did not reasonably represent his annual earning capacity."

That the award is to be computed under par. (c) also follows from the consideration that under pars. (a) and (b) the "average annual earnings" are computed by multiplying the daily wage by three hundred. As stated in *Baltimore & O. R. Co. v. Clark, supra*, p. 599:

"Subdivisions (a) and (b) are applicable only where the employment is of a continuous nature; for it is only in such cases that the multiplication of the average daily wage by three hundred would approximate the average annual earnings. Where the employment is intermittent or discontinuous in its nature, multiplying the average daily wage paid during employment by three hundred would give as annual earnings a sum far in excess of the actual earning power of the employee, and consequently that method of determining average annual earnings cannot reasonably be applied and the method prescribed by subdivision (c) must be followed."

And as stated in *Marshall v. Andrew F. Mahony Co., supra*, p. 76:

. . . "To apply subdivision (b) to the facts of the instant case would result in the payment of unreasonable, arbitrary, and capricious rates of compensation, in violation of the spirit of the legislation and would give rise to grave questions as to the constitutionality of the statute."

Independent of statutory emergency relief measures, where employment is staggered, as here, to spread employment, under compensation provisions similar to pars. (a), (b), and (c), compensation must be computed on the basis prescribed by paragraph (c). Compensation must be based upon the earning capacity of the injured workman in the employment and as he was employed at the time of his injury. *Producers and Ref. Corp. v. McDougal,* 166 Okla. 60, 26 Pac. (2d) 210; *Oklahoma City v. Arnold,* 165 Okla. 294, 25 Pac. (2d) 651; *State Road Comm. v. Ind. Comm.* 56 Utah, 252, 190 Pac. 544.

By the express language of par. (c) "in cases where the foregoing methods [those prescribed by pars. (a) and (b)] of arriving at the average annual earnings of the employee cannot reasonably and fairly be applied" the award must be fixed as prescribed by that paragraph. The commission's finding recites "that because such employment [that of the previous watchman] consisted in seven nights' work per week, the method set out in . . . (b) is not applicable" and that the award must therefore be fixed under par. (c). It concluded that under that paragraph the sum earned by the previous watchman during the previous year, "reasonably represents the average earning capacity of the injured employee at the time of his injury." This conclusion was erroneous. In determining what "reasonably represented" deceased's earning capacity, the commission entirely disregarded "the previous earnings of the employee." It considered that the previous watchman was an employee "of the same or most similar class" and took his annual earnings as the sole measure of the earning capacity of the deceased "at the time of his injury," in disregard of the stated terms of his employment and the existing absence of opportunity to procure constant and regular employment. It impliedly found that under existing conditions the deceased, working only six hours a day for five days a week, would have earned on the average during the ensuing years the same amount annually as the previous watchman earned during the previous year working twelve hours a day for seven days a week. It ignored the terms of par. (d) under which six hours, not twelve, must be taken as the average daily wage of the deceased because it constituted his day's work by agreement. *Builders' Mut. Casualty Co. v. Industrial Comm.* 213 Wis. 246, 251 N. W. 446. It is obvious that the earnings of the previous watchman is not "such sum as . . . shall reasonably represent the average annual earning capacity of the injured employee at the time of the injury," which par. (c) provides shall be the

basis of the award. As stated in *Presque Isle v. Industrial Comm.* 200 Wis. 446, 228 N. W. 589:

"It is contemplated that the compensation shall bear some reasonable relation to the loss which the dependents have sustained by reason of the death of him upon whom they are dependent for their support. Their compensation is to be based upon an amount which shall reasonably represent the average annual earning capacity of the injured employee at the time of the accident in the employment in which he was working at such time."

We are of opinion that the trial court was correct in ruling that "the annual earning basis of the employee, and of his fellow employees [the three other watchmen] is definitely fixed by the earnings of such employees during the week preceding the accident," and in remanding the record to the commission "to formulate an award" upon that basis.

*By the Court.*—The judgment of the circuit court is affirmed.