GLANCY MALLEABLE IRON COMPANY and another, Plaintiffs and Appellants, vs. INDUSTRIAL COMMISSION, Defendant and Appellant: SCHMOLLER and another, Defendants and Respondents.

*November 10, 1934—January 8, 1935.*

For the plaintiffs-appellants Glancy Malleable Iron Company and Travelers Insurance Company there were briefs by *Olin & Butler,* and oral argument by *Byron H. Stebbins,* all of Madison.

For the defendant-appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the defendants-respondents Gottfried Schmoller and Employers Mutual Liability Insurance Company there was a brief by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *L. J. Burlingame* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

FRITZ, J.  This appeal involves principally the question as to which of the two compensation insurance carriers, who are parties to this action, is liable for compensation to the defendant, Gottfried Schmoller, as an employee of the plaintiff, Glancy Malleable Iron Company (hereinafter called the Glancy Company).  From January, 1901, to May, 1933, Schmoller was in the employment of that company.  Its insurance against liability for workmen's compensation was carried by the defendant, Employers Mutual Liability Insurance Company (hereinafter called the Employers Company), at all times material to the issues herein, prior to April 1, 1931, and also subsequent to April 1, 1933; and by the plaintiff, Travelers Insurance Company, for the interval between those dates.  For the first twenty-nine years of Schmoller's employment he worked as a moulder, which exposed him to inhalation of silicate dust to such an extent that by January, 1930, he had become medically disabled because of silicosis; and, as he had pains in his chest, was short of breath, and was losing weight and getting weaker, and could not continue to perform hard labor as a moulder any more, he then spoke to the superintendent of his employer about his condition in those respects and requested to be given cleaner and lighter work.  The superintendent recalled that Schmoller then told him that the work was getting too strenuous for him and that he would like a lighter job.  He did not recall Schmoller's referring to a

pain in the chest, but testified that it was possible that they had that conversation and that he had forgotten about it. At all events, it is undisputed that, because of that conversation, the superintendent gave Schmoller lighter work in January, 1930, as a night watchman and oven-tender. For that work he was paid at the rate of forty-five cents per hour until November, 1931, and thereafter at thirty-eight and one-half cents, instead of receiving his former average earnings as a moulder of $6 per day for forty to fifty hours per week, when paid on a piece-work basis, or fifty to fifty-two and one-half cents per hour, when paid on a time basis. Thereafter, until January 19, 1932, he worked thirteen hours a day, except occasionally when the oven was not in operation. That full-time employment ceased on January 19, 1932, because of business conditions due to the depression, but he was continued on the pay-roll, subject to call, to relieve the one remaining full-time watchman and oven-tender. Under that arrangement he was called and worked only about eleven days, including twelve hours on March 18, 1933, but his employer had informed him that commencing about May 1st he was to have more steady work.

When the Employers Company, on April 1, 1933, again became the compensation insurer of the Glancy Company, it had all of the latter's employees, including Schmoller, examined by one of its physicians, and, on April 18, 1933, as the result of that examination, he found that Schmoller had silicosis in the second or third stage. Thereupon the Glancy Company took Schmoller's name off its pay-roll, and on May 4, 1933, he was informed by the superintendent that the doctor thought it would be better for his health if he remained out of the foundry, and that he could not work any more for the Glancy Company.

Schmoller testified that when he worked last, on March 18, 1933, as well as ever since, he was short of breath and unable to do any heavy work; that he expected and would have continued to work as relief watchman and oven-tender

if called on May 1, 1933; but that he has not worked or looked for work elsewhere because he could not do heavy work and light work was hard to get. Physicians, who examined Schmoller between June and November, 1933, testified that he then had silicosis in at least the second stage; that he had become medically disabled because of silicosis by January, 1930, and that his work as night watchman and oven-tender for two years thereafter materially aggravated his pre-existing silicotic condition; and they advised that he should not continue in that employment.

The examiner, who had been authorized by the commission to make findings, found that Schmoller—

"because of his employment as a moulder, and as a night-watchman and oven-tender, did inhale dust so as to cause applicant to have a silicosis; that the applicant became disabled because of silicosis on March 18, 1933, while employed as night-watchman and oven-tender; . . . that although applicant's employment was changed about January 20, 1930, to lighter work, that of night-watchman and oven-tender at a lesser rate of pay per hour, the applicant suffered no wage loss because of disability prior to March 18, 1933; that applicant, because of his injury, has been, since March 18, 1933, disabled to an extent equal to one-half of total disability and is entitled to compensation for disability on that basis. . . ."

Upon that finding the Glancy Company and the Travelers Insurance Company, as its insurance carrier, were ordered to pay compensation that accrued since March 18, 1933.

That finding, insofar as it was intended thereby to find that the first compensable disability of Schmoller, because of silicosis, occurred on March 18, 1933, is contrary to the evidence which established that he had, in fact, sustained such disability in January, 1930, because at that time his silicotic condition had progressed to such an extent that, because of pains in his chest, shortness of breath, and weakness, he could not continue to do the hard work of a moulder, and therefore was obliged to request his employer to give

him lighter work, which then resulted in a wage loss to him of at least five cents per hour. That reduction in his hourly earning capacity because of silicosis was such a wage loss as entitled him to compensation for the partial disability which he had sustained. *Bonomo v. State Workmen's Ins. Fund,* 111 Pa. Super. 402, 170 Atl. 428, 429; *Behrens v. R. F. Stevens Co.* 188 App. Div. 66, 176 N. Y. Supp. 28, 31; *Smolenski v. Eastern C. D. Co.* 87 N. J. Law, 26, 93 Atl. 85; *In re Nicola Ciattei,* 3d Ann. Rep. U. S. Comp. Com. 153. As it also appears that the Glancy Company received actual and complete notice of that disability within thirty days after Schmoller knew the nature of his disability and its relation to his employment, and that the absence of written notice was not due to any intention to mislead the employer, or that it was misled thereby, Schmoller's right to compensation for such partial compensable disability as occurred in January, 1930, has not become barred under sec. 102.12, Stats. *Bashaw Valley Co-op. C. Co. v. Industrial Comm.* 200 Wis. 237, 227 N. W. 950; *Zurich General Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772.

Consequently, the commission should have found the extent to which Schmoller had become disabled in January, 1930, and also the amount of compensation which was to be paid to him on that account by the Glancy Company, and the Employers Company, as its compensation insurer up to April 1, 1931. The examiner's finding that, since March 18, 1933, Schmoller has been disabled to the extent of one-half of total disability does not necessarily warrant the assumption that that was also the extent of Schmoller's disability in January, 1930. On the contrary, it appears that, subsequent to January, 1930, increased medical disability arose because of a new onset, induced by the subsequent exposure to which Schmoller was subjected while working as watchman and oven-tender, and which aggravated his

pre-existing silicotic condition. Under those circumstances, if on account of such an increase in medical disability there had also been an additional wage loss, the employer, at the time that additional wage loss was sustained, and the insurance carrier on the risk at that time, would be liable for such increase in compensation as Schmoller would have become entitled to. *Zurich General Acc. & L. Ins. Co. v. Industrial Comm.* 203 Wis. 135, 233 N. W. 772; *Outboard Motor Co. v. Industrial Comm.* 206 Wis. 131, 136, 239 N. W. 141. However, it does not appear that Schmoller sustained any additional wage loss, otherwise than because of lack of employment due to the existing business depression, prior to the termination of his employment by the Glancy Company on May 4, 1933. As he performed the last work, which the Glancy Company had for him, on March 18, 1933, without any additional wage loss by reason of any increase in disability since January, 1930, and as he expected to be called on about May 1, 1933, for more steady work as night watchman and oven-tender, and presumably, but for the termination of his employment by his discharge on May 4, 1933, would have performed that work without any increase in wage loss, no liability for additional compensable disability arose within the period, ending April 1, 1933, that the Travelers Insurance Company was the compensation insurance carrier for the Glancy Company. The mere fact that Schmoller's discharge on May 4, 1933, may have been prompted by his employer anticipating a future increase in his wage loss because of increased medical disability, would not warrant holding that liability for additional compensation had arisen prior to that date. *North End Foundry Co. v. Industrial Comm.* 217 Wis. —, 258 N. W. 439.

On an appeal by the Industrial Commission, it is contended that the judgment is erroneous insofar as the circuit court remanded the record because of error in computing the amount of the compensation to be paid for disability

sustained on March 18, 1933. As the award for disability sustained as of that date must be set aside, it is not necessary to review the manner in which the examiner attempted to determine the average annual earnings to be used as basis for awarding compensation. However, it may be helpful to note that, although he rightly concluded that the computation was to be made under par. (c) of sec. 102.11 (2), Stats., it is obvious that he disregarded the fact that Schmoller's total earnings during the year preceding March 18, 1933, were only $53.01, to such an extent that his finding that an average annual wage of $1,500 would fairly measure the average annual earning capacity of Schmoller, if he were not disabled, is grossly in violation of the provision in sec. 102.11 (2) (c), Stats., that the sum found "shall reasonably represent the average annual earning capacity of the injured employee at the time of injury." *Allis-Chalmers Mfg. Co. v. Industrial Comm.* 215 Wis. 616, 255 N. W. 887.

The Employers Company, on a motion for review, contends that because the appellants did not file a petition in twenty days to have the Industrial Commission review the examiner's findings and order, the circuit court should have granted a motion made by the Employers Company for the dismissal of the action on the ground that it was to review an award of an examiner, and not an award that had been reviewed or passed on by the full board. That contention cannot be sustained. Sec. 102.18 (2), Stats. 1933, provides that the Industrial Commission may authorize a commissioner or examiner to make findings and orders, and any party in interest dissatisfied therewith may file a written petition with the commission to have it review such findings or order. However, sub. (3) of sec. 102.18, Stats., provides:

"If no petition is filed within twenty days from the date that a copy of the findings or order of the commissioner or

examiner was mailed to the last known address of the parties in interest, such findings or order shall be considered the findings or order of the industrial commission as a body, unless set aside, reversed or modified by such commissioner or examiner within such time."

Consequently, as no petition was ever filed for a review of the examiner's findings and award, they became, under and by virtue of that statutory provision, the findings and award of the commission as a body, and as such they were subject to review in an action in court brought against the commission for that purpose under sec. 102.23, Stats.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment vacating the award in all respects and remanding the record to the Industrial Commission, with directions to dismiss the application as to the Travelers Insurance Company, and for further proceedings, in accordance with the opinion.