CARR'S, INC., and another, Respondents, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 18—May 7, 1940.*

For the appellant Industrial Commission there were briefs by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondents there were briefs by *Otjen & Otjen* of Milwaukee, and oral argument by *C. J. Otjen.*

On the motion for rehearing, briefs *amici curiæ* were also filed by *Padway, Goldberg & Tarrell* of Milwaukee, and by *William E. Brown* of Milwaukee.

The following opinion was filed February 13, 1940:

FOWLER, J. This is a workmen's compensation case. The commission awarded temporary compensation to the claimant, a clerk in a grocery store, who sustained an injury in the course of her employment. The only question involved is whether the compensation was computed on the proper basis. The commission based the computation on the earnings of full-time women employees who regularly worked forty-eight hours per week. The claimant and some forty

other employees of the employer were regularly employed on Saturdays and Wednesday afternoons only. These employees regularly worked ten hours on Saturdays and five hours on Wednesday. They also worked when called upon at other times, but their employment was limited to twenty-three hours per week. The respondents claim that these employees constituted a separate class, and their compensation should be based on the basis of full-time employment for twenty-three hours per week.

The claimant was temporarily totally disabled for a considerable period of time before hearing was had as to the amount of the weekly award. Up to that time she had been paid $7.35 per week. Claim was made that she was entitled to more, and a hearing was had to determine the correct amount. The examiner who conducted the hearing computed the compensation under par. (c) of sub. (1) of sec. 102.11, Stats., and on the basis of earnings of full-time women workers who worked forty-eight hours per week and at claimant's wage of thirty cents an hour held the claimant's "average weekly earnings" under that paragraph to be $14.40 a week. An award was made of seventy per cent of this amount or $10.08. On review by the commission the commission concluded that the compensation should be computed under par. (a) of said subsection, which they interpreted, on the basis that full-time women employees worked forty-eight hours per week, as giving her "average weekly earnings" of $3 per day for 4.8 days per week, and reached the same result as the examiner whose award they confirmed. The employer and its insurer brought action to review the award. The circuit court held with the commission that the award should be computed under par. (a), but interpreted the paragraph as requiring computation of the award at seventy per cent of the minimum "average weekly earnings" as fixed by sub. (1) of the statute, because twenty-three hours per week was the full working time of the members of the class of employees

of which the claimant was a member. The actual full-time earnings of such member at claimant's wage of thirty cents per hour would be 2.3 times her daily wage of $3 or $6.90. This is less than the minimum "average weekly earnings" which under such minimum is $10.50 per week, seventy per cent of which would give the claimant a weekly compensation of $7.35.

The statutes fix the award per week for total temporary disability at seventy per cent of the "average weekly earnings" of the employee. Sec. 102.43 (1), Stats. The "average weekly earnings" of the employee are fixed by sec. 102.11, Stats. It is agreed by the parties that the computation of the weekly award must be based on either par. (a) or par. (c) of sub. (1) of this section. These paragraphs are set out in the margin.[1] Inspection of par. (c) discloses

[1] "(1) The average weekly earnings for temporary disability shall be taken at not less than ten dollars and fifty cents nor more than thirty dollars, and for permanent disability or death shall be taken at not less than twenty dollars nor more than thirty dollars. Between said limits the average weekly earnings shall be determined as follows:

"(a) Daily earnings shall mean the daily earnings of the employee at the time of the injury in the employment in which he was then engaged. In determining daily earnings under this paragraph, overtime shall not be considered. If at the time of the injury the employee is working on part time for the day, his daily earnings shall be arrived at by dividing the amount received, or to be received by him for such part-time service for the day, by the number of hours and fractional hours of such part-time service, and multiplying the result by the number of hours of the normal full-time working day for the employment involved. The words 'part time for the day' shall apply to Saturday half days and all other days upon which the employee works less than normal full-time working hours. The average weekly earnings shall be arrived at by multiplying the daily earnings by the number of days and fractional days normally worked per week at the time of the injury in the business operation of the employer for the particular employment in which the employee was engaged at the time of his injury. . . .

"(c) In the case of persons performing service without fixed earnings, or where normal full-time days or weeks are not maintained by the employer in the employment in which the employee worked when injured, or where, for other reason, earnings cannot be determined under the methods prescribed by paragraph (a) or (b), the

that the claimant's award is not to be determined by this paragraph. She has fixed earnings, normal full-time days are maintained in the employment in which she worked, and there is no other reason why her compensation cannot be computed under par. (a), as inspection of par. (a) discloses that every fact involved in computing an award under par. (a) exists in her case. We will rest this point upon this statement without reiterating and allocating those facts. The award should be computed under par. (a).

It being established that the award involved should be computed under par. (a) we have to consider whether the commission correctly interpreted that paragraph in applying it to the factual situation. Inspection of the paragraph with the factual situation in mind will disclose that the commission computed the award under the last sentence of that paragraph. In so doing, they construed the language of the sentence "the number of days . . . *normally* worked per week . . . in the business operation of the employer *for the particular employment* in which the employee was engaged" as referring to the number of days normally worked by full-time women employees who worked 4.8 days per week. The respondents contend that under the factual situation involved the language should be referred to the number of days per week, or 2.3 days, normally worked by the forty employees of which claimant was one who worked that number of days when they worked the full time which they were permitted to work. By the commission's interpretation the "average weekly wage" is 4.8 times $3 or $14.40, and the award is seventy per cent of that or $10.08. By the respondents' interpretation and that of the circuit court the commission should have applied their formula for determining the "aver-

earnings of the injured person shall, for the purpose of calculating compensation payable under this chapter, be taken to be the usual going earnings paid for similar services on a normal full-time basis in the same or similar employment in which earnings can be determined under the methods set out in paragraph (a) or (b)."

age weekly wage" by multiplying the daily wage of $3 by 2.3, the full time the forty employees might work, which would give $6.90 as the full-time earnings per week of the forty. But these actual weekly earnings being less than the $10.50 fixed by sub. (1) of the statute as the minimum average weekly earnings, the award should be seventy per cent of that sum, or $7.35.

The decision of the case depends on what is meant, under the facts of this case, by the phrase "the particular employment" in which the claimant was engaged at the time of her injury—whether "the particular employment" was that of a clerk working at most 2.3 days a week or that of a clerk working 4.8 days a week. The claimant's work was the same as that of women workers who worked forty-eight hours per week. Both waited on trade. But there is no doubt under the undisputed evidence that there were two distinct classes of employees: One when working full time engaged "in the business operation of the employer," working 4.8 days a week and the other, comprising forty or more, working 2.3 days per week when working their full time. The latter were placed and carried in a separate class by the Industrial Commission itself, and at the commission's suggestion, to avoid complications in computing unemployment compensation benefits which the commission administers. The group is recognized as a group or class of employees by the unemployment compensation department of the commission and by the labor union with which the employees of the instant employer are affiliated. They are given the special name of part-time employees by the union and the wage of the women members of the class is under agreement with the union fixed at thirty cents an hour. The union dues of these part-time workers are twenty-five cents per week. Those of full-time workers are $1.50 per month. This may not necessarily be controlling, but the employees who are limited to twenty-three hours a week are treated as a separate class of workers

by everybody concerned, just as other workers are treated as a separate class when the basis of their classification is the nature of their work.

Perhaps the most reasonable basis for determining the meaning of the phrase "the particular employment" is to consider the "fundamental idea" of the Workmen's Compensation Act, which is "to award compensation for. a wage loss suffered either by disability, total or partial, permanent or temporary." *North End Foundry Co. v. Industrial Comm.* 217 Wis. 363, 373, 258 N. W. 439. That idea was theretofore applied in *Allis-Chalmers Mfg. Co. v. Industrial Comm.* 215 Wis. 616, 255 N. W. 887, wherein the earnings of the employees in regular "staggered" part-time employment instead of those who worked continuously in regular full-time employment were taken as the basis of compensation to a workman in the staggered employment. If part-time regular employment caused by "staggering" workmen is the proper basis of computing earnings, upon like reason is it a proper basis in the instant case. The idea of the *Allis-Chalmers Case* was approved and applied in *Highway Trailer Co. v. Industrial Comm.* 225 Wis. 325, 333, 274 N. W. 441, where language from the *Allis-Chalmers Case* opinion is quoted:

"Compensation must be based upon the earning capacity of the injured workman in the employment and as he was employed at the time of his injury."

In the opinion of the *Highway Trailer Co. Case* the rule is referred to as "well established," page 333, that "compensation must be based upon the earning capacity of the injured workman in the employment and as he was employed at the time of his injury." This rule was also quoted in *Struck & Irwin Fuel Co. v. Industrial Comm.* 222 Wis. 613, 622, 269 N. W. 319. It is also said in the opinion in the *Struck & Irwin Case,* p. 622:

"Compensation must bear some reasonable relation to the loss which the injured employee will probably sustain, and, therefore, must be based upon the amount which reasonably

represents his average weekly earning capacity at the time of his injury."

The same idea is expressed in *Presque Isle v. Industrial Comm.* 200 Wis. 446, 228 N. W. 589; *Glancy Malleable Iron Co. v. Industrial Comm.* 216 Wis. 615, 622, 258 N. W. 445; and *Hammann v. Industrial Comm.* 216 Wis. 572, 257 N. W. 612.

We have here an employee regularly earning $4.35 per week awarded by the judgment of the circuit court $7.35 per week as compensation for the wage loss sustained by her through receiving injury in course of her employment. She is awarded that sum because the Workmen's Compensation Act prescribes that sum as the amount that shall be paid to an injured employee whose earnings are less than $10.50 per week. She is given the full protection that the statute contemplates shall be given to every workman so injured whose weekly earnings are less than that sum. Full justice is given her within the contemplation of the act by awarding her the same sum that any other workman within the act anywhere in the state receiving like wage would regularly receive who was temporarily totally disabled by an injury received in the course of his employment. No reason is perceived why she should receive any more than any other such workman of like earnings so injured would regularly receive.

*By the Court.*—The judgment of the circuit court is affirmed.

The following opinions were filed May 7, 1940:

FOWLER, J. (*on motion for rehearing*). The case is up on motion for rehearing. The appellants are insisting that the statute involved absolutely requires the compensation of the applicant during the healing period of her injury to be determined according to the method employed by the commission which is fully stated in the opinion originally filed by the court. They claim that the weekly wage of the ap-

plicant is not to be determined by a classification of employees but solely upon the kind of service she was performing at the time of her injury. In their brief upon the motion they base their position upon the fact that throughout the Workmen's Compensation Act the term "in the employment in which engaged" means the kind of service in which engaged. Conceding that the phrase quoted has that meaning it does not follow that no classification of workers can be made as a basis upon which the employee's weekly wage is to be determined. The commission itself based its computation upon a classification. It made a classification of employees into women workers and men workers and put the applicant in the class of women workers. The women clerks worked forty-eight hours per week; the men clerks worked fifty-five hours per week. The men workers did the same kind of work as the women workers. The commission computed the applicant's compensation upon the basis of the hours per week normally worked by full-time employees, but it made hours per week worked by a class of workers, not the kind of work performed, the basis of its computation. As well may the hours per week normally worked by a class constituted of regularly employed part-time employees be made the basis of determining the weekly wage of such part-time workers as hours normally worked by women full-time workers may be made the basis of determining the weekly wage of full-time women employees or as the hours per week normally worked by full-time men workers may be made the basis of determining the weekly wage of full-time men employees. It is to be noted that the forty employees who worked Wednesday afternoons and Saturdays and at other times when called upon comprised both men and women clerks. The weekly wage of a full-time man employee performing the same kind of service as the instant employee would have been computed on the basis of a work week of fifty-five hours. The weekly wage of a full-time woman employee performing the same kind of service would have

been computed on a basis of a work week of forty-eight hours. Upon like reason the weekly wage of one of the forty part-time employees who normally worked not to exceed twenty-three hours per week should be computed upon the hours per week normally worked by members under that classification. The instant employee's weekly wage was computed on the basis of the full time permissible for part-time workers instead of the average time actually worked by such employees, which might perhaps be considered as the number of hours normally worked by the part-time workers, instead of the maximum limit for such workers, but the employee cannot, and the commission should not, complain that by the method used she was given more than she would have received had her earnings been based on the average hours per week worked by the forty part-time workers. The plain fact is that fifty-five hours was the normal work week of full-time men clerks, forty-eight hours was the normal work week of women clerks, and twenty-three hours per week was the limit if not the precise normal work week of the forty part-time workers, whether men or women. A classification of employees was necessary. The work week cannot be fixed without it. Without putting the forty employees in a separate class the normal work week would necessarily be fifty-five or forty-eight hours per week, depending on which class was most numerous, or the average hours per week of the two classes whichever might be considered as the normal work week of all employees performing the same kind of services. But this would involve a classification. And if a classification of either two or three classes must be made, the normal work week of each class may more justly and reasonably be made the basis of the weekly wage of each as was made by the trial court, than the normal work week of women workers as was done by the commission.

It is urged in the briefs on the motion for rehearing filed *amici curiæ,* as was urged and fully presented in the original brief of the appellants, that the statute now in force was

enacted by the 1937 legislature and was in force when the instant applicant received her injury. It was there contended, a contention which the appellants do not repeat in their brief upon the motion for rehearing, that the present statute was taken from Minnesota and should receive the same interpretation that had been given it by the courts of Minnesota when it was enacted here. This is correct. This contention should have received the consideration in our original opinion that we now here give it. We have read all the Minnesota decisions cited to us that have dealt with the Minnesota statute, and we find nothing in any of them that requires us under the rule invoked to retract our original position.

The Minnesota statute above referred to is sec. 4325, Minn. Stats. 1927. The portion thereof relating to computation of "average weekly earnings," which is the basis of the award in workmen's compensation cases under both statutes, is in substance identical with the provision of our statute covering that matter set out in the margin in the original opinion, with one exception. The Minnesota statute provides that the weekly wage shall not be less than five and a half times the daily wage. Our statute, sec. 102.11 (1) (f) provides that average weekly earnings shall in no case be less than thirty times the normal hourly earnings.

It is to be noted that the disability here involved is temporary as distinguished from permanent disability. Only two of the Minnesota decisions involve temporary disability. In both of these the compensation of the injured workman was based on his own actual "weekly wage" instead of the "weekly wage" computed on the number of days "normally worked [per week] in the business of the employer for the employment involved," as the Minnesota statute expressly says it shall be, and as our statute expressly says. The only difference in the language of the two statutes, besides that already noted fixing the number of days in the Minnesota statute and hours per week in our statute to be used in com-

puting the minimum weekly wage, is that the Wisconsin statute uses the phrase "in the business operation of the employer for the particular employment" instead of the language above quoted from the Minnesota statute. The language quoted from the two statutes means precisely the same.

In the first of these temporary-disability cases, *Anderson v. Roberts-Karp Hotel Co.* 171 Minn. 402, 214 N. W. 265, an employee of the hotel company working as a night porter was injured while on duty. His earnings from that company were $90 per month, but he also did similar work for another employer for which he was paid $17 per month. He was disabled for one hundred twenty-five weeks. The commission first fixed his compensation during his period of temporary disability on the basis of his earnings at $90 a month, and on reconsideration based it on his entire earnings of $107 a month. Thus the employee's compensation was based upon his own total earnings as distinguished from that based on the days "normally worked [per week] in the business of the employer for the employment involved." The basis of compensation was his own actual earnings, not what he might have earned if he had been working the full time normally worked in the business of his employer for the employment involved, or his capacity to earn as the movants contend the instant compensation should be measured.

The other Minnesota case involving temporary disability is *Modin v. City Land Co.* 189 Minn. 517, 250 N. W. 73. An employee was regularly working two days a week at $4 per day. For a temporary disability his compensation was based on a weekly wage of $22 a week computed by multiplying his own daily wage by the five and a half days of the Minnesota statute. On this basis the instant applicant's weekly wage would be three times $3 (thirty times thirty cents) or $9. Sec. 102.11 (1), Wis. Stats., allows a minimum of $10.50 per week for temporary disability and this obviates the method of computation next above suggested,

but compensation herein was allowed on the $10.50 per week basis. The provision of the Minnesota statute above stated that weekly wage should in no case be less than five and one-half times the daily wage was the basis of the computation in the *Modin Case*. Our provision comparable to the five and one-half day per week of the Minnesota statute is as above stated not less than thirty times the hourly wage.

The other decisions of the Minnesota court under the compensation statutes involve death benefits. The first of these is *Stevens v. Village of Nashwauk,* 161 Minn. 20, 200 N. W. 927. The deceased was a member of a voluntary fire department and death resulted from injury received while acting in that capacity. The members were not constantly employed, but acted on call and were paid on the basis of $2 for each call and $1 an hour for each hour on duty after the first. The deceased was injured during the second hour of his service while on duty pursuant to a call. The commission computed the death benefits to his dependents on the basis of a weekly wage of five and one-half times $3, or a daily wage of $3, according to the statute above referred to that the weekly wage should not be less than five times the daily wage. Had the case been one of compensation for disability during the healing period the employee's weekly wage would have been computed the same at five and one-half times his actual earnings for the day in his part-time employment. On that basis the compensation of the instant employee would be computed at three times her daily wage of $3.

In *Anderson v. Coca Cola Bottling Co.* 190 Minn. 125, 128, 251 N. W. 3, the employee was being paid at the rate of $1.25 per hour for his services and the use of his own truck in delivering the product of his employer. The time employed in making deliveries was irregular. For his services, and the use of his truck from June 29th to July 2d, inclusive, he had received $54.81. Other employees engaged in delivering for the employer received an average wage of $30 per week and worked on an average of ten hours a day.

"From this and other evidence" the commission's allowance on a weekly wage basis of $30 was held proper.

The last case cited is *Lee v. Villard Cons. School District No. 5,* 192 Minn. 449, 257 N. W. 90. The point there involved was compensation for the loss resulting to dependents for the death of the driver of a school bus. What is said in that opinion as to such loss being measured by the capacity of the deceased to earn in other capacities than driving a bus two hours a day is true enough. We subscribe to it. It reads as follows, p. 452:

"The loss resulting from death or disability of a part-time worker subject to the act must be measured, if its objective is to be reached, and if the plain command of section 4325 is to be obeyed, not only by his wages in the particular employment in which he was injured, but also his earning power in other occupations, if any. Were the award to be made upon the narrow basis of the part-time earnings, the deprivation would go uncompensated in proportion as wages or capacity for earnings in other employment are ignored. To that extent, the purpose of the law to erect a new standard of industrial justice would be thwarted. To secure compensation for actual loss, within the pecuniary limits of the statute, section 4325 fixes the measure of compensation for injury or death of a part-time employee. It was properly applied in this case."

But we are not here dealing with death benefits or permanent disability. We are dealing with temporary disability. The Minnesota court, in fixing compensation in the only case comparable to the instant one in its facts, the *Modin Case, supra,* computed the employee's weekly wage by taking his own earnings on the day of his injury and multiplying it by five and one half. Our statute, which is precisely the same as the Minnesota statute as to daily wage and weekly wage, if applied as the Minnesota court applied their statute, would require the weekly wage to be determined by multiplying the hourly earning of the instant applicant by thirty, as our statutes provides instead of multiplying the daily wage by five

and one half as the Minnesota statute provides. As stated in our original opinion, our statute, sec. 102.43 (1), allows compensation for total disability at seventy per cent of the weekly wage. Seventy per cent of the instant applicant's wage computed as the Minnesota court computed it under their statute would be seventy per cent of $9, but our statute, sec. 102.11 (1), fixes $10.50 as the minimum weekly wage. The applicant would be allowed, under the precedent of the *Modin Case, supra,* seventy per cent of that sum instead of seventy per cent of $9. She was allowed this by the circuit court.

It is said by the Minnesota court in the *Modin Case, supra,* p. 519:

"Workmen's compensation acts are framed upon the theory that industry or business must bear the loss resulting to workmen from personal injuries caused by accidents arising out of and in the course of the employment. When a workman is disabled [in the course of his employment], he can earn nothing during the continuance of the disability; and the amount of loss does not necessarily depend upon whether the employment was for a definite period, or for a day or for a week only. The incapacity or disability prevents him earning wages in other employments."

The wage loss in that case was computed by multiplying his daily wage by five and one half. That was considered as fixing the amount of his loss under the statute, regardless of whether other workmen engaged in like service normally worked six or seven days a week.

Our statute establishes a maximum and minimum wage loss. The primary purpose of the law is to be borne in mind in fixing loss in cases of temporary disability just as it is in cases of permanent disability. That purpose is, as declared in the cases cited in the original decision and in those quoted herein from the Minnesota decisions, to compensate, to specified limits, for the loss sustained. It is contended here that the purpose of the law is to compensate for loss of earning

power in cases of temporary disability, just as it is in cases of permanent disability. If so, why fix a maximum weekly wage of $30 a week in cases of temporary disability? If a full-time workman earning $10 a day were injured, as was the instant applicant, his actual loss of wage for twenty-five weeks would be $1,500, yet our statute would allow him only seventy per cent of $30 a week for twenty-five weeks or $525, less than half of his actual loss. In case of permanent disability the purpose is to compensate for actual loss sustained, but with specific limitations, and earning power becomes a matter of proper consideration in every case under the statute as it now reads. In the instant case of temporary disability earning power during the period of temporary disability is beside the case because the applicant has been steadily working for the instant employer for years prior to the injury at one and a half days a week subject to further service upon call as she was working when injured. She did not want full-time employment. She had her family duties to perform as housekeeper and in the preparation of meals and performance of the other tasks commonly performed by a mother doing the work herself for three grown sons living with her as a family, and full-time employment would have unduly interfered with her performance of such duties. Manifestly she would not have procured full-time employment during her twenty-five weeks of healing period had she not been injured. She received nearly twice what she would have received during the healing period had she not been injured. In other cases of long-continued temporary disability from injuries sustained during a short temporary period of employment it might not be.

It is further to be suggested, as implied in what we have heretofore said, that in no Minnesota case has the situation involved given occasion for making any classification of employees. That court has not construed the Minnesota statute as to its requiring or not requiring such classification.

It is therefore open to this court to construe our statute as disclosed in the provisions of the Workmen's Compensation Act as a whole, giving due force to each specific provision in situations to which it definitely applies. We consider that viewing the statute as a whole our original opinion properly applies the statute to the instant case, although it does not show consideration of the derivation of the statute or of the change in it since the prior decisions of the court cited in the opinion were rendered.

So far as we are able to discover the only principle followed by the Minnesota court in construing the statute of that state is that weekly wage in each case must be decided according to the particular facts involved in that case, always bearing in mind the primary purpose of the statute to compensate for the loss sustained by the injured workman. We consider that our original decision not only does not violate, but carries out that principle.

We have extended this opinion to unusual length but have thought proper to do so because of the apparent great concern of the appellants and the persons filing *amici curiæ* briefs, and to demonstrate what our original opinion does not show, that we have given consideration to all points raised in the original briefs.

*By the Court.*—The motion for rehearing is denied.

ROSENBERRY, C. J. (*dissenting*). I respectfully dissent from the decision in this case. It is my view that sec. 102.11 (1) (a), Stats., should be construed as it was construed by the commission and for the reasons stated in the opinion and decision of the commission. So construed, compensation should be awarded on the basis of full-time earnings even though the claimant has been employed on a part-time basis. Claimant should be compensated for loss of earning capacity and not for wage loss based on part-time employment.

Mr. Justice WICKHEM concurs in this dissent.