372

No. 35,277

Philip R. Schul, *Appellee*, v. R. D. W. Clapp, Administrator of the Estate of Margaret Schindler, Deceased, and The State of Kansas, ex rel. Jay S. Parker, attorney general, *Appellants*.

(118 P. 2d 570)

Opinion filed November 8, 1941.

*Jay S. Parker,* attorney general, and *L. A. Hasty,* of Wichita, for appellant State of Kansas; *M. P. Shearer,* of Wichita, for appellant R. D. W. Clapp.

*Robert C. Foulston, George Siefkin, Samuel E. Bartlett, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris* and *John F. Eberhardt,* all of Wichita, for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This is another chapter in the litigation over the estate of the late Margaret Schindler, a wealthy old lady of Wichita who died intestate in 1930, leaving no known heirs. Earlier chapters which have required our attention in the decade succeeding Mrs. Schindler's death were *Woltz v. First Trust Co.,* 135 Kan. 253, 9 P. 2d 665; *McVeigh v. First Trust Co.,* 140 Kan. 79, 34 P. 2d 571; *Heine v. First Trust Co.,* 141 Kan. 370, 41 P. 2d 767; *Wentworth v. First Trust Co.,* 147 Kan. 466, 77 P. 2d 976; and *Bristow v. First Trust Co.,* 140 Kan. 711, 38 P. 2d 108.

Some other lawsuits are still pending and undetermined in the district court involving controverted claims of heirship, but we are not presently concerned with them. But there was one other lawsuit involving this estate which arose in the probate court, and on appeal was tried and decided in the district court on November 14, 1939. That case was captioned and numbered thus: "In the Matter of the estate of Margaret Schindler, Deceased, F. B. McVeigh *et al.*, Appellants, Case No. 104,819." That adjudication will require some notice later in this opinion.

The vicissitudes of ten years' litigation incurred liabilities against the Schindler estate which its liquid assets and income could not meet; consequently, on November 12, 1938, the then administrator, The First Trust Company of Wichita, filed a petition in the probate court for an order to sell certain of the Schindler real estate "to pay all the debts of the deceased and the charges of administering the estate." Proper notice of this petition was given in conformity with the statute then extant. At that time the Schindler realty was in charge of a conservator appointed by the district court; and on the date set for the hearing the probate court declined to act on the petition because of a possible conflict of jurisdiction with the district court. The state of Kansas, which had been concerned about the estate throughout its history, filed in the district court a motion to discharge the conservator and surrender the possession of the real estate to R. D. W. Clapp, who had succeeded the First Trust Company as administrator. This motion was granted, and thereafter, on December 6, 1939, Clapp as administrator filed his verified petition for an order to sell the Schindler real estate to pay "debts, taxes, costs and other lawful charges against decedent's estate." A hearing on this petition was set for January 5, 1940, and notice thereof was given in conformity with the new probate code of 1939. At that hearing the probate court made a finding that the allegations of the petition had been duly proved, and that an order of sale of the realty ought to be made. Accordingly the court ordered that the property consisting of a business property on Main street (lots 36 and 38 on Main street in the original town of Wichita), and a residential property (south 50 feet of lot 4) on Emporia avenue in Tuttle's addition in the city of Wichita, be sold at private sale for not less than three-fourths of their appraised value, and that the administrator report his doings to the court promptly. An appraisement was made and the business property was sold to this plaintiff, Philip R. Schul,

for $16,000, on terms, viz., $1,600 in cash and the balance to be paid upon approval and delivery of a merchantable title. In the written contract of sale it was provided that the administrator was to furnish—

"An abstract of title to said real estate, showing a good, clear and unencumbered record, title, free from the clouds of every kind whatsoever, except None, said abstract to be sent to second parties' attorney upon approval of sale by the probate court for examination by said party of the second part."

The submitted abstract showed good title in Mrs. Schindler, but out of abundance of caution plaintiff's attorneys raised questions of law which centered about the power of the probate court to authorize the administrator to sell the property to pay expenses and charges incurred after Mrs. Schindler's death, and whether the estate should be administered under the law as it existed prior to the adoption of the new probate code, or under the latter.

What has been said above may be regarded as matter of inducement leading up to the gist of the present action which the parties concerned formulated by joinder of issues under the declaratory judgment act to have certain questions concerning the title authoritatively determined, and so this action was brought to recover the down payment of $1,600 or an adjudication of the sufficiency of the tendered title, and whether it complied with the terms of the contract of sale between the administrator and the plaintiff.

The trial court gave its opinion that the plaintiff as purchaser "might be exposed to litigation over the title" and "that the title offered to the plaintiff is not one in which 'there is no doubt involved either as a mater of law or fact' and therefore the decision in this case should be for the plaintiff declaring that the title offered him is not marketable."

Judgment was accordingly rendered for plaintiff and the administrator appeals. The state through its attorney general associates itself with him in the appeal.

The error urged against the judgment is the net result—that it should have been in favor of the defendant administrator on the record as a matter of law.

To determine the correctness of this contention it seems expedient in this appeal to consider, point by point, the argument of appellee's counsel who seek to uphold the judgment of the court below.

On the first point, which discusses the essentials of a merchantable title, this court, in *Spaeth v. Kouns,* 95 Kan. 320, 326, 148 Pac. 651,

L. R. A. 1915 E 271, adopted the rule stated in Maupin's well-known work on Marketable Title and held that for a title to be unmarketable the defect of title must be of substantial character; facts must be known at the time which fairly raise a reasonable doubt as to the title, and a mere possibility or conjecture that such a state of facts may be developed at some future time does not constitute a breach of contract on the part of a vendor of real estate "to furnish . . . a good, clear and unencumbered . . . title free from clouds of every kind whatsoever," such as plaintiff bargained for, in short, a marketable title. In *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126, the action was to recover the price plaintiff had paid for an oil and gas lease, the alleged basis therefor being that the lessors did not have good title to convey. In the opinion this court said:

"The rule is a just and familiar one that a marketable title is one which is free from reasonable doubt; and under this rule a title is doubtful and therefore unmarketable if it exposes the party holding it to the hazard of litigation. (Citations.)

"On the other hand, mere quibbles and peccadilloes which the ingenuity of counsel can raise against a title do not render it unmarketable." (p. 100.)

In the same case, the syllabus, in part, reads:

"Before an action can be maintained to recover the purchase price of an oil and gas lease on the ground that the lessors' title is unmarketable, some defect of title of a substantial character must be shown, and where no reasonable question of law or fact is shown which casts a reasonable doubt on the validity of the title it cannot be held to be unmarketable." (Syl. ¶ 2.)

See, also, *Barrett v. McMannis,* 153 Kan. 420, 110 P. 2d 774, and article on Marketable Titles in November, 1940, issue of 9 J. B. K. 142-149.

The next question propounded by appellee is whether merchantability of the instant title should be determined by the old or the new probate code. It is argued that since Mrs. Schindler died long before the new code was enacted the procedure to be followed in authorizing a sale of the real property of her estate should be the old code, and ordinarily that contention would be correct, as this court decided in *State, ex rel., v. Good,* 142 Kan. 434, 49 P. 2d 633. But the rule announced in that case was governed by its particular facts, and was not intended as one of universal application. The new probate code (G. S. 1939 Supp. 59-2602) provides that the rules of procedure which it prescribes shall govern all probate proceedings brought after they take effect and also all further procedure in probate proceedings then pending, except to the extent that in the

opinion of the court their application in a particular proceeding, when they take effect would not be feasible or would work injustice, in which event the former procedure applies. Here is good statutory sanction, indeed a mandate, to everybody concerned in the Schindler estate that the new probate code shall govern its administration unless the new procedure would· not be feasible or would work injustice. Neither of these exceptions would have any tangible basis. Were it otherwise, this very question whether the old code or the new one should be used in the administration of the Schindler estate after the new probate code became effective, was squarely raised and squarely decided to a finality in the district court case No. 104,819, "In the Matter of the estate of Margaret Schindler, Deceased, F. B. McVeigh *et al.*, Appellants," where appellants' petition for an order "to proceed in the administration" of the estate "under the probate laws applicable prior to July 1, 1939," was disallowed and denied. This court was not appealed to for a review of that decision, so, right or wrong, it settled that question so far as the administration of the Schindler estate is concerned.

But the only material point affecting the title which might turn on the question whether the Schindler estate realty should be disposed of under the old code or the new is deduced from some variation in the text of the two statutes touching the extent of the power of the probate court to authorize its sale and for what purposes. Under the old code the statute provided that where the personal estate was insufficient to pay all debts of the deceased and the charges of administering the estate, the real property could be sold on order of court. (G. S. 1935, 22-801, 22-807.) In the new probate code, the authority to sell reads thus:

"The executor or administrator may sell real estate of a decedent whenever the sale thereof is necessary for the payment of reasonable funeral expenses, expenses of last sickness, wages of servants during the last sickness, cost of administration, taxes, debts, or legacies charged upon such real estate. The proceeds of any such sale which shall be available for distribution shall be distributed to the same persons and in the same shares as if it had remained real estate." (G. S. 1939 Supp. 59-1410.)

It is gravely contended that because Mrs. Schindler left a substantial personal estate which was entirely adequate to pay whatever inconsequential debts she may have owed at her death, the statute in force prior to the enactment of the new code did not sanction a sale of the realty of the decedent's estate· for debts or charges incurred on behalf of that estate after ·her death. The diligence of

counsel for the appellee has brought together some respectable decisions from other jurisdictions which support that contention. One of these is *Carr, Guardian, v. Hull et al.*, 65 Ohio St. 394, 62 N. E. 439, and we are reminded that our probate code of 1868 was taken from Ohio. But the cited Ohio case was decided thirty-three years later, so it cannot be regarded as authoritative in this jurisdiction. (*Jones v. Pebler*, 371 Ill. 309, syl. ¶ 3, 20 N. E. 2d 592; *Gain v. Bowlby*, 114 F. 2d 519, syl. ¶ 5; *Carr's, Inc., v. Industrial Comm.*, 234 Wis. 466, 290 N. W. 174, Rehearing, 292 N. W. 1; Crawford's Statutory Construction, sec. 235.)

Under our statute of 1868 (G. S. 1935, 22-801 *et seq.*) all sales of decedent's real estate on order of the probate court were made for the next seventy-one years, and not once in that long period were its terms so narrowly construed as urged by appellee; and it would serve no good purpose now to give it a posthumous construction to that effect. We note that in a note to *Colyer v. Huntley*, 179 Ga. 332, 175 S. E. 901, in 95 A. L. R. 1143 *et seq.*, pertinent decisions are cited pro and con on this point. In our view, however, expenses prudently incurred for the protection of a decedent's estate against adverse or ill-founded claims in litigation are essentially expenses of administration, under the terms of the old statute or the new. Of necessity such an interpretation must be given to either statute, otherwise the probate court and its officer, the administrator, would be powerless to protect the estate whose well-being is their responsibility. Holding this view, it follows that as to the power of the probate court to order a sale of the Schindler estate, that power was broad enough under the old statute or the new code.

Another point of over-cautious timidity on the part of plaintiff and his counsel is that any possible but yet undiscovered heirs of Margaret Schindler have twenty-one years in which to appear and establish their right to the estate. Without deciding that the statute of 1935, which reduced the time in which an absent or unknown heir may appear and claim the proceeds of the estate from twenty-one years (R. S. 1923, 22-935) to ten years (G. S. 1935, 22-1207 *et seq.*), would govern the time for such a claim, the duty to wind up the decedent's estate is not to be delayed or stayed on that possibility. If such heir should appear and invoke his rights under either statute, it would not be to have the estate of the decedent delivered to him, but the net proceeds of the fully administered estate in the form of money in the hands of the county treasurer or the state treasurer.

We shall not do counsel for the appellee the injustice of construing their argument on this point to mean that nothing can be done to dispose of the Schindler realty and wind up the administration of the estate until the lapse of twenty-one years because of the possibility that an heir may appear within that time.

Touching the ejectments or other actions pending in the district court, they do not affect the title for two reasons—they are stayed by order of the district court until the Schindler estate is wound up (*Page v. Van Tuyl*, 150 Kan. 285, 92 P. 2d 110), and also because the litigants in those actions have all appeared in the probate court and filed claims to the estate and thus have submitted to its jurisdiction.

Counsel for appellee also hint about the possibility of fraud which may have inhered in the making of the large expenses chargeable to the estate, and which may sometime or other provoke a direct or collateral attack upon the probate proceedings under which the property involved has been sold to plaintiff. Counsel, however, protest that they "do not intend to accuse anyone of fraud in the premises." Very well; since nobody is accused of fraud, and no irregularity in any of the proceedings is made to appear, it seems sufficient to repeat the rule of law stated at the beginning of this opinion —that to render a title unmarketable some defect of a substantial character must exist; facts must be known which fairly raise a reasonable doubt as to the title, and a mere possibility or conjecture that a state of facts may be developed at some future time does not constitute a breach of warranty on the part of a vendor of real estate to furnish a good, clear and unencumbered title.

The judgment of the district court is reversed and the cause remanded with instructions to enter judgment for the defendant administrator.