No. 36,212

C. J. Burton, *Appellee,* v. Harry Mellor, *Appellant.*

(154 P. 2d 108)

Opinion filed December 9, 1944.

A. D. Weiskirch, of Wichita, argued the cause and *George B. Collins* and *C. L. Williams,* both of Wichita, were on the briefs for the appellant.

*Austin M. Cowan,* of Wichita, argued the cause and *W. A. Kahrs* and *Robert H. Nelson,* both of Wichita, were on the briefs for the appellee.

The opinion of the court was delivered by

Dawson, C. J.: This was an action to recover the agreed consideration for the sale of an oil and gas lease on eighty acres of land in McPherson county.

The contract of sale was admitted, but a defense was based on the alleged failure of plaintiff to furnish an abstract showing a good merchantable title to the property.

Defendant's objection to the title was because of a lease which had been executed by the then owner of the land about fifty-eight years ago. That was an exclusive prospecting and mining lease for a term of ninty-nine years to the "McPherson Kansas Central Kansas Mining Company." It contained the usual grant of an exclusive right to prospect and develop the mining possibilities of the land, and further provided "that said lease could not be cancelled unless the lessee should fail to make an honest effort to prospect or search said premises for mining products, and negligently and knowingly hold said premises without making such an honest effort; . . . and second party shall commence 'prospecting' within ten years herefrom."

The lease further provided that the lease would be forfeited only after the lessors had given thirty days' notice in writing to three of the principal officers of the corporate lessee, and if following such notice the lessee should continue to let the premises remain unworked when the same could be worked profitably.

In defendant's answer he alleged that he notified plaintiff that he would require a release of the aforementioned lease of 1886, or proper evidence of its forfeiture according to its terms, and that neither of these suggested requirements had been met; and that the title tendered by plaintiff was not a "commercial, merchantable and marketable title."

In his reply plaintiff alleged that the aforesaid corporation had not been in actual existence for more than fifty years; that it had never complied with the terms of its lease and had never paid rent thereunder; that the lease of 1886 had never been assigned or transferred by the corporate lessee; that whatever rights the lease had conferred had been forfeited and barred by the statute of limitations and likewise by adverse possession by the plaintiff holder of the fee title and by his predecessors in interest; and that he and his predecessors in interest had held the premises adversely and openly against the corporate lessee for more than fifteen years. ·

Plaintiff's reply further alleged that he had presented these facts to defendant by affidavits and records; that the charter of the "McPherson Kansas Central Kansas Mining Company" was forfeited by formal order of the State Charter Board on June 5, 1912, for failure to file its annual statements as required by law. Among the affidavits submitted to defendant and his counsel to show the extinction of the aforesaid corporation and the fact that all the members of its last board of directors (who under the then existing law would have become its liquidating trustees, by G. S. 1915, § 2184) were dead, was one by E. Engstrom, a resident of McPherson county for the past sixty years, who had been the secretary of the corporation from its inception, and who averred that on its behalf he had secured the leases for 115,000 acres of land in McPherson, Saline and Ellsworth counties and had paid the recording fee therefor, and—

"That he is the sole surviving officer of said corporation and the only person now living conversant with the makeup of said corporation and all of its activities at all times;

"That this affiant states positively, that at no time was there any prospecting for any mining products by said corporation on the lands covered by the aforesaid lease . . .

"That no payment[s] provided for in the aforesaid mining lease were ever made by the said corporation under the terms of said lease or any leases taken by the said corporation;

"That affiant states positively that none of the leases taken by the McPherson, Kansas, Central Kansas Mining Co. were ever sold or assigned;

"That this affiant further states positively that at no time was any honest

effort to prospect or search said premises for mining products ever made by said corporation or any one acting in its behalf, and that at all times ever since said mining lease was executed in the year of 1886 no such prospecting was ever done by said corporation on any of the lands leased by said corporation or by any one in its behalf. That none of the terms of the said mining lease were ever complied with by the said corporation.

"Affiant further states that at no time was an actual cash or other valuable consideration ever paid for said mining leases by McPherson, Kansas, Central Kansas Mining Co. . . .

"That in reality said corporation has ceased to exist for more than fifty years last past. . . .

"'That this affiant knows that none of the terms of the said mining lease, covering the within described lands, have ever been complied with by the said grantee, McPherson, Kansas, Central Kansas Mining Co., or anyone acting in its behalf. That this affiant as the sole surviving officer of said corporation, although he was a loser in actual cash from the venture, states that [neither] the said corporation [n]or any one claiming by, through, or under it, has ever asserted or claimed any interest in and to any of the lands covered by the leases taken by the said McPherson, Kansas, Central Kansas Mining Co. for more than fifty years."

This affidavit and a certified copy of the order of June 5, 1912, of the state charter board canceling the charter of the corporation were permitted to be attached to plaintiff's reply by order of court.

Defendant moved for judgment on the pleadings on the ground that they showed that the title of the property was unmarketable and encumbered with clouds which justified a rejection of the tendered title.

This motion was overruled; hence this appeal.

In the oral argument some of the justices, including the writer, raised the question whether the overruling of defendant's motion for judgment was appealable, but counsel for both parties were agreed that the order of the district court was intended to be a final determination of the case and that the omission of a formal record of final judgment was no more than a clerical mistake. As we have often said a motion for judgment is the equivalent of a demurrer (*Pennington v. Kross,* 154 Kan. 667, 121 P. 2d 275) and is reviewable on a timely appeal following the conclusion of the trial. (G. S. 1935, 60-3302; G. S. 1943 Supp. 60-3314a and citations; *Bozich v. Metropolitan Life Ins. Co.,* 155 Kan. 573, 580, 127 P. 2d 499.) See, also, *Thresher Co. v. Nelson,* 106 Kan. 716, 189 Pac. 907; *Gas Service Co. v. Consolidated Gas Utilities Corp.,* 150 Kan. 715, 96 P. 2d 608.

Now to the merits of this appeal: Can it be said that the fact

that the eighty acres of present concern was leased for mining purposes fifty-eight years ago to a corporation which never functioned, under which nothing was ever done, and which had its charter canceled thirty-two years ago for its failure to file its annual statements of its corporate affairs, and whose last board of directors are all dead and gone—do these incidents rise to the potency of a flaw in the lessor's title which by any reasonable chance would subject the holder of the tendered lease to the hazard of litigation? We think not, and are constrained to agree with the judgment of the trial court that defendant's objection to the sufficiency of the title is without merit. In *Newell v. McMillan,* 139 Kan. 94, 30 P. 2d 126, where the subject of marketable and unmarketable titles was under discussion, we said:

"The rule is a just and familiar one that a marketable title is one which is free from reasonable doubt; and under this rule a title is doubtful and therefore unmarketable if it exposes the party holding it to the hazard of litigation. (*McNutt v. Nellans,* 82 Kan. 424, 108 Pac. 834; *Williams v. Bricker,* 83 Kan. 53, 109 Pac. 998, 30 L. R. A., n. s., 343; *Howe v. Coates,* 97 Minn. 385, 4 L. R. A., n. s., 1170.)

"On the other hand, mere quibbles and peccadilloes which the ingenuity of counsel can raise against a title do not render it unmarketable. To what hazard of litigation did these titles expose their holder? None is suggested, and it is difficult to imagine any. In Maupin on Marketable Title to Real Estate (p. 708), frequently quoted by this court (as in *Spaeth v. Kouns,* 95 Kan. 320, 326, 148 Pac. 651), it is said:

" 'The defect of title of which the purchaser complains must be of a substantial character; one from which he may suffer injury. Mere immaterial defects which do not diminish in quantity, quality, or value the property contracted for, constitute no ground upon which he may reject the title. Facts must be known at the time which fairly raise a reasonable doubt as to the title; a mere possibility or conjecture that such a state of facts may be developed at some future time is not sufficient.' " (p. 100.)

See, also, *Schul v. Clapp,* 154 Kan. 372, 118 P. 2d 570; and *Chapman v. Continental Oil Co.,* 149 Kan. 822, 89 P. 2d 833.

Counsel for appellant cite cases and authorities like *Eisenhour v. Cities Service Oil Co.,* 149 Kan. 853, 89 P. 2d 912, which hold that in the defense of an action for specific performance of a contract for the purchase of an oil and gas lease it is not necessary to show that a title is bad in fact in order to render it unmarketable or unmerchantable; that it is sufficient if there be doubt, based on reasonable grounds, which would impel an ordinarily prudent man with knowledge of the facts and aware of the legal questions involved not to accept it in the ordinary course of business. This rule is sound and

just, but how does it affect the case at bar?  What doubt based on reasonable grounds can be conjured up against plaintiff's title? What remote probability of being vexed with the hazard of litigation would threaten the grantee of the proffered lease?  None is suggested and we can think of none.

The judgment is affirmed.